ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI-ESPECIAL

| | | |
|---|---|---|
| ZORAYA SÁNCHEZ VEGA<br><br>Apelante<br><br>v.<br><br>XIOMARA PÉREZ SANTIAGO; DANIEL J. ROMÁN VÁZQUEZ; LA SOCIEDAD LEGAL DE GANANCIALES POR ELLOS COMPUESTA<br><br>Apelados | KLAN202300258 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: VB2021CV00486<br><br>Sobre: Desahucio y Cobro de Dinero |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 16 de octubre de 2024.

Comparece la señora Zoraya Sánchez Vega (en adelante, señora Sánchez Vega o apelante), para solicitar que se revoque la *Sentencia* emitida, el 28 de febrero de 2023, y notificada el 1 de marzo de 2023, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, foro primario o TPI).[1] En la misma, el TPI desestimó la *Demanda* presentada por la parte aquí apelante y declaró *Con Lugar* la *Reconvención* que presentó Xiomara Pérez Santiago, Daniel J. Román Vázquez y la sociedad legal gananciales compuesta por ambos (en adelante y en conjunto, los esposos Román Pérez o parte apelada). En consecuencia, ordenó a la apelante a pagar a la parte apelada, la suma de $51,900.00 dólares.[2]

---

[1] Apéndice del recurso, a las pág. 1-18. Destacamos que la parte apelante no incluyó en el apéndice el formulario de notificación OAT-1812, con relación a la *Sentencia* emitida. A los fines de auscultar nuestra jurisdicción, se procedió a examinar el expediente del caso ante el TPI en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), a la Entrada 73.
[2] Apéndice del recurso, a la pág. 18.

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

I

EL 27 de agosto de 2021, la señora Sánchez Vega presentó una *Demanda* sobre desahucio y cobro de dinero contra los esposos Román Pérez.[3] Alegó que era dueña en pleno dominio de una propiedad inmueble,[4] ubicada en el municipio de Vega Baja, y que, el 30 de septiembre de 2019, otorgó un *Contrato de Arrendamiento* a favor de los esposos Román Pérez sobre dicha propiedad. Indicó que las partes acordaron un término de duración del contrato de cinco (5) años, contados a partir del 1ro de octubre del 2019, hasta el 1ro de septiembre de 2024. A su vez, esbozó que acordaron un canon de arrendamiento mensual de $500.00 dólares, por el periodo de noviembre de 2019 a abril de 2020, y que, a partir del mes de mayo de 2020, el canon mensual sería de $1,000.00 dólares. Afirmó que dicho contrato expresaba que, de no realizar los pagos correspondientes, la apelante podía acudir ante el Tribunal y solicitar el desahucio de la parte apelada.

En la *Demanda*, adujo, además, que los esposos Román Pérez no pagaron los cánones de arrendamiento según acordados en el contrato, por lo que adeudaban la suma de $7,500.00 dólares. Por último, enfatizó que requirió, en varias ocasiones, el pago de los cánones adeudados a los esposos Román Pérez, y que estos se negaron a realizar los mismos. Por todo lo anterior, solicitó que se declarase ha lugar la *Demanda* y, en consecuencia, (i) ordenara el desahucio y desalojo de la parte apelada de la propiedad en cuestión; (ii) condenara a la parte apelada a pagar la suma de

---

[3] Apéndice del recurso, a las págs. 25-27.
[4] Descripción: Ubicada en la Calle 1A, Vega Baja Lakes, Vega Baja, Puerto Rico, 00693. Residencia en cemento compuesta de dos (2) plantas. El primer piso dividido en espacios para dieciséis (16) camas, dos (2) baños, cocina, comedor, sala, lavandería y oficina. El segundo piso consta de tres (3) cuartos y dos (2) baños. La casa cuenta con estacionamiento.

$7,500.00 dólares por los cánones de arrendamiento vencidos y no pagados, e (iii) impusiera el pago de costas, gastos y honorarios de abogado.

En respuesta, el 23 de septiembre de 2021, la parte apelada presentó su *Contestación a Demanda y Reconvención*,[5] la cual fue enmendada, el 10 de noviembre de 2021.[6] Como defensas afirmativas, alegó que: (i) el contrato fue objeto de novación; (ii) incurrió en cuantiosas sumas de dinero en reparaciones necesarias y construcciones, las cuales, conforme pactó con la parte apelante, serían descontadas de los cánones de arrendamiento, y (iii) que la apelante incurrió en dolo, toda vez que ocultó vicios en el inmueble, tanto en los permisos como en el pozo séptico, el cual estaba inservible y las aguas negras discurrían por la propiedad en controversia y la propiedad de los vecinos. Por tanto, razonó que procedía la devolución del monto total de las reparaciones y construcciones, y que no procedía el cobro de los cánones de arrendamiento, puesto que los mismos fueron satisfechos.

En lo relativo a la reconvención, la parte apelada arguyó que el contrato de arrendamiento sufrió varias novaciones, entre las cuales se encontraba un contrato de compraventa. Sostuvo que, habían convenido la compra de la propiedad, dado a que la apelante no tenía el dinero para arreglar el pozo séptico o construirlo. Asimismo, adujo que acordaron que los arreglos al pozo séptico serían descontados de los cánones de arrendamiento y que las construcciones que se le hicieran a la propiedad no serían consideradas al momento de ponerle valor a la misma, a menos que no se concretara la compraventa; en cuyo caso, serían pagadas por la parte apelante. Además, expuso que la apelante consintió a que se le realizaran mejoras, reparaciones y construcciones al inmueble,

---

[5] Apéndice del recurso, a las págs. 28-34.
[6] *Íd.*, a las págs. 35-42.

a sabiendas de que la propiedad tenía un vicio oculto y no estaba apta para los fines que fue arrendada.

Por último, señaló que cumplió con las prestaciones a las que se obligó, mientras que la apelante obró con dolo y mala fe. En virtud de lo anterior, razonó que procedía que la apelante les vendiera la propiedad y, que se restara, al valor de venta de la propiedad, la cantidad de $80,000.00 dólares, por concepto de reparaciones, construcciones y mejoras hechas al inmueble. Además, solicitó el pago de $60,000.00 dólares por dinero dejado de devengar, ante la negativa de la apelante para reparar el pozo séptico y vender la propiedad.

Posteriormente, el 16 de noviembre de 2021, la señora Sánchez Vega presentó su *Contestación a Reconvención Enmendada.*[7] En esencia, esbozó que los esposos Román Pérez aceptaron que habían otorgado un contrato de arrendamiento sobre la propiedad en controversia. Así, pues, sostuvo que el contrato era la ley entre las partes y, por consiguiente, los referidos esposos estaban sujetos a los términos y condiciones de dicho acuerdo. Por otra parte, enfatizó que la parte apelada manifestó que recibió la propiedad en buen estado y que la cláusula número diez (10) del contrato establecía que las mejoras eran en beneficio de la propiedad sin compensación alguna. Igualmente, aseveró que no le constaba de propio y personal conocimiento que las alegadas mejoras fueron realizadas sobre la propiedad. Entre sus defensas afirmativas, adujo que la propiedad no adolecía de vicios ocultos, y que los esposos Román Perez realizaron las mejoras sin obtener los permisos correspondientes, por lo que asumieron el riesgo. Por último, sostuvo que el contrato de arrendamiento suscrito entre las partes

---

[7] Véase, SUMAC, a la Entrada 28.

no sufrió novaciones, por lo que estaba sujeto a los términos y condiciones originales.

Así las cosas, el 15 de octubre de 2022, las partes presentaron el *Informe de Conferencia con Antelación a Juicio* (Informe).[8] Conforme se desprende en dicho Informe, la parte apelada se opuso a que la parte apelante presentara enmiendas a las alegaciones. Sobre el particular, expresó que el caso ya se encontraba en etapa de conferencia con antelación a juicio y que el descubrimiento de prueba había finalizado. En atención a lo anterior, el 17 de octubre de 2017, el tribunal de instancia celebró una vista sobre conferencia con antelación a juicio.[9] Se desprende de la *Minuta*,[10] la prueba documental que quedó estipulada por las partes, la cual se marcó como Identificación o como Exhibit.[11] Por otro lado, como parte de los procedimientos acaecidos en dicha vista, el tribunal *a quo* "[a]ceptó el Informe de Conferencia [con Antelación a Juicio] como el acta que regirá los procedimientos en el juicio", y señaló el juicio en su fondo.[12]

De ahí, previo al juicio en su fondo, las partes presentaron la prueba documental que se proponían a utilizar en la vista, incluyendo la que fue marcada como Identificación de parte o como Exhibit por estipulación o de parte.[13]

Luego de varios incidentes procesales, el TPI celebró el juicio en su fondo. Allí, el referido foro tuvo la oportunidad de aquilatar la prueba testimonial y documental. Conforme se desprende de los autos, la prueba testifical presentada por la parte apelante consistió en el testimonio de la señora Sánchez Vega,[14] mientras que la

---

[8] Véase, SUMAC, a la Entrada 62.
[9] *Íd.*, a la Entrada 63.
[10] *Íd.*
[11] *Íd.,* a la Entrada 67, y Registro General de Evidencia Presentada, a las Entradas 71 y 72.
[12] *Íd.*, a la Entrada 63.
[13] *Íd.,* a las Entradas 65 y 67.
[14] *Íd.,* a las Entradas 71 y 72.

presentada por la parte apelada consistió en el testimonio de los esposos Román Pérez.[15] Por otro lado, en cuanto a la prueba documental, se desprende lo siguiente:

La prueba documental estipulada presentada fue marcada como Exhibit 1 - Contrato de Arrendamiento suscrito entre las partes; y del Exhibit 2 al Exhibit 22 – Evidencias de pago.[16] La parte apelada presentó como prueba documental los siguientes documentos:

Exhibit 1- Carta del 22 de junio de 2021 suscrita por la demandante-reconvenida Zoraya Sánchez Vega (antes Id. 1) (3 folio).

Exhibit 2 (a)- Factura de Constructora Peniel del 3 de noviembre de 2019, (antes Id. 13) (1 folio).

Exhibit 2 (b)- Factura de Constructora Peniel del 2 de diciembre de 2019, antes Id. 13 (1 folio).

Exhibit 2(c)- Factura de Constructora Peniel del 13 de enero de 2020, antes Id. 13 (1 folio).

Exhibit 2 (d)- Factura de Constructora Peniel del 13 de marzo de 2020, antes Id. 13 (1 folio)

Exhibit 2 (e)- Factura de Constructora Peniel del 1 de julio de 2020, antes Id. 13 (1 folio).

Exhibit 2 (f)- Factura de Constructora Peniel del 28 de julio de 2020, antes Id. 13 (1 folio).

Exhibit 2 (g)- Factura de Constructora Peniel del 10 de agosto de 2020, antes Id. 13 (1 folio).

Exhibit 2 (h)- Factura de Constructora Peniel del 7 de septiembre de 2020, antes Id. 3 (1 folio).

Exhibit 2 (i)- Factura de Constructora Peniel del 28 de septiembre de 2020, antes Id. 13 (1 folio).

Exhibit 2 (j)- Factura de Constructora Peniel del 26 de octubre de 2020, antes Id. 13 (1 folio).

Exhibit 2 (k)- Factura de Constructora Peniel del 27 de noviembre de 2020, antes Id. 13 (1 folio).

Exhibit 2 (l)- Factura de Constructora Peniel de 8 de enero de 2021, antes Id. 13 (1 folio).

Exhibit 2 (m)- Factura de Constructora Peniel del 27 de febrero de 2021, antes Id. 13 (1 folio).

---

[15] Véase SUMAC, a las Entradas 71 y 72.
[16] Apéndice del recurso, a las págs. 2-3. Véase, SUMAC, a la Entrada 71.

Exhibit 2(n)- Factura de Constructora Peniel del 31 de marzo de 2021, antes Id. 13 (1 folio).

Exhibit 2 (o)- Factura de Constructora Peniel del 30 de abril de 2021, antes Id. 13 (1 folio).

Exhibit 2 (p)- Factura de Constructora Peniel del 28 de mayo de 2021 (1 folio). E (sic)

[E]xhibit 3- Mensajes de textos entre las partes del 26 y 28 de mayo de 2021, 23 y 27 de junio de 2021, 10, 16 y 17 de julio de 2021 (antes Id. 3 al 9) (5 folios).

Exhibit 4 (a)- Factura de RR Welding del 7/6/20 por $900.00 (antes Id. 12) (1 folio).

Exhibit 4 (b)- Factura de RR Welding del 5/24/20 por $5,000.00 (antes Id. 12) (1 folio).

Exhibit 5- Planos, antes Id. 11 (1 folio).

Exhibit 6- Fotografías 153, antes Id. 14 (50 folios).

Exhibit 7- Facturas del plomero, antes Id. 10 (1 folio).[17]

Es menester señalar que, durante el *primer* día de juicio, se suscitó una controversia sobre dos de los testigos anunciados por la parte apelada, entiéndase, el representante de la Constructora Peniel y el representante de RR Welding (en conjunto, representantes). Se desprende de la *Minuta*,[18] que la representación legal de la parte apelante se opuso a que se presentara el testimonio de los representantes, puesto que la parte apelada había incumplido con una orden del TPI, en cuanto a informar sus nombres en un término, con la finalidad de que se pudiera evaluar si les tomaría una deposición. Dado al incumplimiento con lo anterior, la juzgadora de instancia dispuso no permitir los testimonios de los dos representantes.

Conviene mencionar que, conforme se desprende de la *Sentencia* apelada, la prueba documental de la parte apelada fue admitida sin objeción de la parte apelante.[19]

---

[17] Apéndice del recurso, a las págs. 2-3. Véase, SUMAC, a la Entrada 67 y a las Entradas 71-72 (Minutas del Juicio en su Fondo y Registro General de Evidencia Presentada).
[18] Véase, SUMAC, a la Entrada 71.
[19] Apéndice del recurso, a la pág. 3.

Culminado el turno de prueba de la parte apelante, la parte apelada presentó verbalmente una solicitud de desestimación conforme a la Regla 39.2(c) de las de Procedimiento Civil,[20] por entender que la apelante no demostró ser dueña en pleno dominio.[21] Esbozó, en síntesis, que esta no probó que fuese la dueña de la propiedad como para poder reclamar un derecho y autoridad sobre la propiedad en cuestión. Adujo, además, que faltaba parte indispensable, en específico, la hermana de la apelante. Sobre este particular, el tribunal de instancia se reservó el fallo.

En ocasión del turno de prueba directa de la parte apelada, se desprende de la *Minuta,* que hubo objeción, específicamente, a la admisibilidad de lo que posteriormente fue marcado como Exhibit 4(a) y 4(b) de la parte apelada. Según surge de los autos, la parte apelante objetó la referida prueba porque los documentos "fueron firmados por un tercero que no estaba presente".[22] En reacción, la representación legal de la parte apelada esbozó que "la Regla 901 de Evidencia en el inciso (b) dice que no necesariamente la persona que firmó el documento debe autenticarlo y puede hacerlo un testigo con conocimiento".[23]

Luego, producto de la vista celebrada, el 28 de febrero de 2023, el foro primario emitió una *Sentencia,* notificada el 1 de marzo de mismo año.[24] En la misma, desestimó la *Demanda* y declaró *Ha Lugar* la *Reconvención.* En consecuencia, ordenó a la apelante a pagar a los esposos Román Pérez la suma de $51,900.00 dólares. En la antedicha sentencia, el foro primario formuló las siguientes determinaciones de hechos:

1. El 30 de septiembre de 2019 Sánchez y Pérez suscribieron un Contrato de Arrendamiento (en

---

[20] 32 LPRA Ap. V, R. 39.2 (c).
[21] Véase, SUMAC, a la Entrada 71.
[22] *Íd.*
[23] *Íd.*
[24] Apéndice del recurso, a las págs. 1-18.

adelante "el contrato de arrendamiento") sobre un inmueble descrito de la siguiente forma:

> "Residencia en cemento compuesta dos plantas. El primer piso dividido en espacios para 16 camas, 2 baños, cocina, comedor, sala, lavandería y oficina. El segundo piso consta de tres cuartos y dos baños. La casa cuenta con estacionamiento. Ubica en Calle 1A #11, Vega Baja Lakes, Vega Baja, Puerto Rico 00693." (en adelante "el inmueble")

2. En el contrato de arrendamiento Sánchez representó que era "dueña en pleno dominio" del inmueble.

3. Sánchez compareció como arrendadora y Pérez como arrendataria.

4. El arrendamiento del inmueble sería con el propósito de dedicarla a "vivienda y/o institución de personas de edad avanzada".

5. El contrato de arrendamiento tenía una vigencia de 5 años, a partir del 1 de octubre de 2019 y vencedero el 1 de septiembre de 2024.

6. Los cánones de arrendamiento eran: $1,000.00 por el mes de octubre de 2019. Luego, el canon sería $500.00 mensuales entre noviembre de 2019 y abril de 2020. A partir de mayo de 2020 el canon sería $1,000.00.

7. Los cánones establecidos se variaron, ya que la arrendadora consintió a otorgar una moratoria para los meses de mayo, junio, julio y agosto de 2021. Además, se acordó que se debía reanudar el pago de la renta en el mes de diciembre de 2020, para un total de 7 meses de moratoria del pago de la renta.

8. Los demandados-reconvinientes hicieron pagos de arrendamiento en las siguientes fechas:

- $500.00 el 12 de noviembre de 2019;
- $500.00 el 10 de diciembre de 2019;
- $500.00 el 13 de enero de 2020;
- $500.00 el 12 de febrero de 2020;
- $500.00 el 11 de marzo de 2020;
- $500.00 el 17 de abril de 2020;
- $500.00 el 17 de mayo de 2020;
- $500.00 el 12 de junio de 2020;
- $500.00 el 13 de julio de 2020;
- $500.00 el 14 de agosto de 2020;
- $500.00 el 14 de septiembre de 2020;
- $500.00 el 13 de octubre de 2020;
- $500.00 el 12 de noviembre de 2020;
- $500.00 el 12 de diciembre de 2020;
- $500.00 el 13 de diciembre de 2020;
- $500.00 el 14 de enero de 2021;
- $500.00 el 15 de febrero de 2021;
- $500.00 el 13 de marzo de 2021;

- $500.00 el 13 de abril de 2021;
- $500.00 el 14 de mayo de 2021;
- $500.00 el 14 de junio de 2021.

9. El inmueble no está inscrito a nombre de Sánchez.

10. Sánchez no tiene escritura o contrato que acredite ser dueña del inmueble.

11. Alegó Sánchez que el inmueble había sido adquirido por su señor padre, fallecido en 1992 a Ernesto Rivera Báez.

12. Sánchez no presenció cuál fue el negocio que alegadamente su padre hizo, ni conoce si su padre quedó a deber alguna cantidad por dicho negocio a Ernesto Rivera Báez.

13. Sánchez no posee ningún documento acreditativo de título a favor de su señor padre, ya fallecido.

14. Sánchez no presentó documentos sobre declaratoria de herederos de su señor padre y se limitó a explicar que dichos documentos "se estaban gestionando". No pudo especificar los trámites ni en qué años entre el 1992 y el presente es que "se estaban gestionando".

15. Sánchez declaró no ser la única heredera de su padre, pues además tiene otra hermana.

16. Sánchez no presentó planilla de caudal relicto ante Hacienda sobre la herencia de su señor padre.

17. Sánchez admitió en el contrainterrogatorio que al momento de suscribir el contrato de arrendamiento no era dueña en pleno dominio.

18. El inmueble no está conectado al sistema de alcantarillados. El sistema para las aguas negras es a través de un pozo séptico.

19. El pozo séptico está ubicado debajo del terreno, por lo cual no es susceptible de ser visto a simple vista.

20. Los demandados-reconvinientes comenzaron a realizar obras en el inmueble.

21. Entre septiembre y octubre de 2021 una de las personas que estaba trabajando en las reparaciones del inmueble, al pisar cierta área del terreno, cayó en un hueco que resultó ser el pozo séptico.

22. Román declaró que el lugar donde estaba el pozo séptico estaba cubierto por planchas de zinc y sobre ellas la tierra y que, al pudrirse el zinc, el terreno cedió cuando el empleado pisó por esa área.

23. El 19 de octubre de 2021 el maestro plomero José I. Rivera Colón, número de licencia 725 y número de

colegiado 0165, visitó el inmueble a petición de Román.

24. El plomero José I. Rivera Colón inspeccionó el pozo séptico y encontró que sus medidas eran 10 x 10 x 7, que el pozo tenía estructuras sobre él, que tenía un drenaje francés y que estaba socavando el terreno.

25. El maestro plomero José I. Rivera Colón señaló que había que realizar prueba de percolación, que había que relocalizar el pozo y que el mismo no tiene dos cavidades.

26. Concluyó además el maestro plomero José I. Rivera Colón que el pozo no cumple con el Código de Reglamento #7 de Planificación.

27. El contrato de arrendamiento señalaba que la arrendataria examinó la propiedad y la recibió "en buen estado de funcionamiento, habilidad, uso, conservación, ordenada y limpia".

28. Sánchez no había visitado el inmueble desde que el inmueble estaba arrendado a inquilinos anteriores. De hecho, en el contrainterrogatorio admitió que no había visitado la propiedad 7 u 8 meses antes de arrendársela a los esposos Román Pérez.

29. Sánchez no estuvo presente al momento en que se le mostró el inmueble a los demandados-reconvinientes.

30. La inspección a la que se refiere el contrato de arrendamiento no incluye las condiciones del pozo séptico, ya que por su ubicación subterránea no era susceptible de que sus condiciones fueran vistas y conocidas por la parte arrendataria.

31. Román declaró que la reconstrucción del pozo séptico costaba entre $18,000.00 y $20,000.00.

32. Los esposos Román Pérez notificaron a Sánchez sobre los hallazgos del pozo séptico.

33. El contrato de arrendamiento establecía que "las reparaciones extraordinarias serán pagadas por la "ARRENDADORA"", es decir, por Sánchez.

34. La reconstrucción del pozo séptico constituye una reparación extraordinaria, que cuyo costo le tocaba sufragar a Sánchez.

35. Una vez los esposos Román Pérez le notifican a Sánchez del estado del pozo séptico y de los costos de reconstruirlo, Sánchez y éstos acordaron que Sánchez les vendería el inmueble y que del precio les descontaría lo que ya habían invertido en reparaciones.

36. Sánchez instruyó a los esposos Román Pérez a que buscaran un tasador para hacer una evaluación del valor del inmueble.

37. Los esposos Román Pérez le solicitaron a Sánchez copia de la escritura para entregarla al tasador.

38. Sánchez representó tener escritura y que, tan pronto la localizara, se la enviaría.

39. Posteriormente, Sánchez indicó que estaba gestionando una Declaratoria de Herederos.

40. Sánchez nunca proveyó ni escritura, ni documentos de declaratoria de herederos.

41. Los esposos Román Pérez continuaron haciendo esfuerzos para que Sánchez les proveyera los documentos y ésta dejó de contestarles los mensajes y llamadas.

42. Los esposos Román Pérez comenzaron la reparación y rehabilitación del inmueble para dedicarlo a una vivienda de personas de edad avanzada.

43. Los esposos Román Pérez contrataron con la compañía Constructora Peniel.

44. Constructora Peniel cotizó $55,212.00 por los trabajos a ser realizados.

45. Los esposos Román Pérez contrataron con RR Welding la construcción y reparación de unos portones y puertas por la cantidad de $5,900.00.

46. Entre otras, la demandada-reconviniente construyó:
    a. Baños con sus rampas de impedido;
    b. Realizó empañetados, colocación de losas, construcción de declives para desagües;
    c. Colocación de puertas y marcos del ancho requerido para que quepan sillas de rueda, reparación de paredes internas, reparación de cablería eléctrica, tirar tramos de energía eléctrica, colocar tramos de tubería eléctrica, reparación de plomería, reparación de filtraciones, reparación de empañetados, sustitución e instalación de lámparas, instalación de cablería y receptáculos para cumplir reglamentación que exige al menos un receptáculo eléctrico por habitación;
    d. Ampliación de la construcción para añadir cuartos, baños, terrazas y áreas recreativas;
    e. Instalación de portones y reparación de portones;
    f. Pintura, cambios de equipos y mezcladoras;
    g. Remodeló los cuartos, colocó puertas, ventanas y arregló los techos;
    h. Remodeló el cuarto de aislamiento, conforme a lo requerido por el Departamento de la Familia.
    i. Colocó gabinetes nuevos, fregaderos industriales, tubería, calentador de gas;

    j.  Montaron abanicos de techo;

    k.  Se construyó techo en galvalume.

47. De los $55,212.00 los esposos Román Pérez pagaron a Constructora Peniel las siguientes cantidades, las cuales se evidenciaron con recibos expedidos por dicha compañía:

- $5,000.00 el 3 de noviembre de 2019;
- $1,500.00 el 2 de diciembre de 2019;
- $2,500.00 el 13 de enero de 2020;
- $3,000.00 el 13 de marzo de 2020;
- $2,500.00 el 1 de julio de 2020;
- $3,000.00 el 28 de julio de 2020;
- $2,500.00 el 10 de agosto de 2020;
- $3,000.00 el 7 de septiembre de 2020;
- $2,000.00 el 28 de septiembre de 2020;
- $2,500.00 el 26 de octubre de 2020;
- $3,000.00 el 27 de noviembre de 2020;
- $3,500.00 el 8 de enero de 2021;
- $2,500.00 el 27 de febrero de 2021;
- $3,000.00 el 31 de marzo de 2021;
- $3,500.00 el 30 de abril de 2021;
- $3,000.00 el 28 de mayo de 2021.

48. En total, los esposos Román Pérez pagaron a Constructora Peniel la suma de $46,000.00.

49. Las facturas de Constructora Peniel, todas venían a nombre de "Corona de Honra Home Care, Inc. (Xiomara Pérez)".

50. Las facturas de RR Welding fueron pagadas por los esposos Román Pérez de sus recursos, para un total de $5,900.00.

51. Los esposos Román Pérez explicaron que "Corona de Honra Home Care, Inc." era una corporación creada por ellos con el propósito de que operara la vivienda de personas envejecientes, pero que al momento de las reparaciones y reconstrucciones no tenía operaciones ni recursos monetarios.

52. Los esposos Román Pérez pagaron las sumas mencionadas en las determinaciones de hecho número 48 y 50 de sus propios recursos y no de recursos de la corporación.

53. Los esposos Román Pérez establecieron que, de haber sabido que Sánchez no contaba con título sobre el inmueble, no hubieran hecho la contratación con ella.

54. Los esposos Román Pérez establecieron que, de haber sabido que Sánchez no contaba con título sobre el inmueble, no hubieran invertido en reparaciones e inversiones para acondicionar el inmueble.

55. Los esposos Román Pérez establecieron que, de haber sabido el pozo séptico estaba inservible y no

cumplía con los requisitos de ley, no hubieran hecho la contratación con ella y no hubieran invertido en reparaciones e inversiones para acondicionar el inmueble.[25]

En vista de las determinaciones de hechos formuladas, el TPI determinó que la señora Sánchez Vega no presentó documentos, escrituras, contratos o resolución de declaratoria de herederos para demostrar que era la dueña del inmueble en controversia. Además, subrayó que el testimonio de la apelante, con relación a la manera en la cual presuntamente advino a ser dueña de la propiedad, estaba plagado de vaguedades e imprecisiones. A tenor, determinó que no logró probar que la apelante era dueña en pleno dominio del inmueble.

Además, el foro primario señaló que la señora Sánchez Vega declaró que tenía una hermana. Sobre el particular, destacó que esta era parte de la sucesión y no se incluyó como parte en el pleito. A esos efectos, razonó que la hermana de la apelante era parte indispensable en el pleito, y que, de ser cierto que el padre de Sánchez Vega adquirió el inmueble en controversia, dicha hermana tendría un interés común sobre dicho inmueble. Por consiguiente, desestimó la demanda de desahucio.

Por otra parte, el foro primario concluyó que la prueba que se presentó en el juicio estableció que los esposos Román Pérez suscribieron el contrato basado, entre otras cosas, en que la apelante era la dueña en pleno dominio del inmueble y que el mismo no tenía vicios que lo hicieran inapto para el propósito contratado. En específico, determinó que la prueba demostró el dolo y el engaño al que fue sometida la parte apelada, toda vez que la señora Sánchez Vega les hizo creer que era la titular de la propiedad y ocultó el vicio del pozo séptico. Por último, destacó que la parte apelada invirtió la suma total de $51,900.00 dólares. Así, pues, declaró *Ha Lugar* la

---

[25] Apéndice del recurso, a las págs. 5-11.

reconvención, y condenó a la señora Sánchez Vega a pagarle a la parte apelada la antedicha cantidad.

Inconforme, el 29 de marzo de 2023, la parte apelante presentó ante esta Curia un recurso de *Apelación*. En el mismo, esgrimió la comisión de los siguientes cuatro (4) errores:

> a. Erró el Tribunal de Primera Instancia al desestimar la demanda de desahucio, bajo el fundamento de falta de parte indispensable arguyendo que la propiedad pertenece a una sucesión de la cual las herederas son únicamente la parte demandante y su hermana; cuando conforme al Código de Enjuiciamiento Civil tienen legitimación para promover el juicio de desahucio los dueños de la finca, sus apoderados, los usufructuarios o cualquiera otro que tenga derecho a disfrutarla y sus causahabientes.

> b. Erró el Tribunal de Primera Instancias (sic) al desestimar el desahucio y no desestimar la reconvención al haberse incumplido con los términos y condiciones claros del contrato de arrendamiento.

> c. Erró el Tribunal de Primera Instancia al admitir en evidencia unos recibos por los alegados trabajos que fueron efectuados sobre la propiedad arrendada, cuando dichos recibos están hechos a nombre y a favor de una Corporación, Corona de Honra Home Care, Inc., que no forma parte del presente pleito, a pesar de la oportuna y correcta objeción de parte.

> d. Erró el Tribunal de Primera Instancia al no desestimar la reconvención por falta de parte indispensable de Corna de Honra Home Care, Inc. y declarar con lugar la reconvención.

El 10 de abril de 2023, la parte apelante presentó una *Moción al Amparo de la Regla 19 del Tribunal de Apelaciones*, en la cual solicitó que se autorizara la reproducción de la prueba oral.

Así las cosas, el 26 de abril de 2023, la parte apelada presentó su *Moción de Desestimación por Incumplimiento a las Reglas 13(B) y 14 del Reglamento de este Tribunal*. En síntesis, los esposos Román Pérez argumentaron que la apelante omitió incluir en el apéndice toda la prueba documental que se presentó en el juicio. En específico, planteó que la señora Sánchez Vega pretendía impugnar unos recibos respecto a unos trabajos que se llevaron a cabo en la

propiedad, los cuales omitió incluir en el apéndice del recurso. A su vez, planteó que la apelante no acreditó la notificación del recurso ante el TPI.

Posteriormente, el 15 de mayo de 2023, esta Curia emitió una *Sentencia* en la cual desestimó el recurso por falta de jurisdicción, toda vez que la apelante no notificó el recurso ante el TPI, según lo exige la Regla 14(B) del Reglamento del Tribunal de Apelaciones.[26] Inconforme con la determinación de esta Curia, el 25 de mayo de 2023, la apelante presentó una *Solicitud de Reconsideración*. Por su parte, el 12 de junio de 2023, la parte apelada presentó su *Oposición a Solicitud de Reconsideración*. Luego de examinar los argumentos de las partes, el 26 de junio de 2023, este foro emitió una *Resolución,* en la cual declaró *No Ha Lugar* la solicitud de reconsideración.[27]

Aún inconforme, el 26 de julio de 2023, la señora Sánchez Vega presentó un recurso de *Certiorari* ante el Tribunal Supremo de Puerto Rico.[28] Así las cosas, el 2 de abril de 2024, el Tribunal Supremo emitió una *Sentencia* en la cual revocó a esta Curia. En lo pertinente, el Alto Foro dispuso devolver el caso ante este Tribunal de Apelaciones para la continuación de los procedimientos tras juzgar que el caso no debió haber sido desestimado por falta de jurisdicción.

Recibido el *Mandato*, el 24 de abril de 2024, emitimos una *Resolución*, para atender el escrito presentado por la parte apelante, y que había quedado pendiente desde el 10 de abril de 2023. En dicha *Resolución* dispusimos cómo se llevarían a cabo los procedimientos relacionados, tanto para obtener la regrabación de los procedimientos, así como para el perfeccionamiento del recurso ante nuestra consideración.

---

[26] La juez Lebrón Nieves emitió voto disidente con opinión escrita.
[27] La juez Lebrón Nieves reiteró su voto disidente.
[28] En el alfanumérico CC-2023-0487.

Desde entonces, se emitieron varias resoluciones, entre ellas, para atender el trámite de la regrabación de los procedimientos ante el TPI, los incumplimientos de la parte apelante con los términos impuestos, así como solicitudes de término adicional presentados por dicha parte para cumplir con lo ordenado. Finalmente, mediante escrito presentado el 16 de agosto de 2024, la parte apelante alegó que los errores esgrimidos en la apelación versaban sobre cuestiones de derecho que emanaban de las propias determinaciones de hecho emitidas en la *Sentencia* apelada. Esbozó que había sido este Tribunal de Apelaciones quien ordenó la transcripción de la prueba. Expuso, además, que tenía dificultades económicas para realizar el trámite, y que esta Curia debía entrar a considerar el presente caso en sus méritos, sin contar con el beneficio de la transcripción o, de considerarla indispensable, debía ordenarse a la Secretaria del Tribunal de Instancia a realizarla, libre de costo.

A raíz de lo anterior, emitimos una *Resolución* en la cual expusimos:

> Según se desprende de los autos, la transcripción de la prueba oral no fue presentada. Sin embargo, en la fecha del vencimiento de lo ordenado, entiéndase, el 16 de agosto de 2024, la parte apelante aduce que los errores esgrimidos versan sobre cuestiones de derecho que emanan de las propias determinaciones de hecho que surgen de la Sentencia apelada y que fue este Tribunal de Apelaciones quien solicitó y ordenó la transcripción. Puntualizamos que fue a solicitud de la parte apelante que este Tribunal ordenó la regrabación de los procedimientos y el trámite sobre la presentación de la transcripción de la prueba oral y no de la manera alegada.[29]

A tenor, concedimos a la parte apelada hasta el 18 de septiembre de 2024, para presentar su alegato en oposición. En cumplimiento, el 9 de septiembre de 2024, la parte apelada presentó su *Oposición a Apelación.*

---

[29] Véase, *Resolución* emitida por este Tribunal de Apelaciones, el 21 de agosto de 2024.

Con el beneficio de la comparecencia de ambas partes, procederemos a exponer el derecho aplicable.

II

## A. Recurso de apelación

La Regla 52.2 (a) de Procedimiento Civil,[30] dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[31] La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[32]

Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.
>
> [...].[33]

No obstante, el término de treinta (30) días para acudir en alzada puede quedar interrumpido mediante la presentación oportuna de una moción de reconsideración fundamentada.[34] En tal caso, el curso del término para apelar comienza a partir del archivo en autos de la copia de la notificación de la resolución que resuelve la moción.[35] Esto, a pesar de que la moción se haya declarado sin lugar.

De otra parte, precisa señalar que en grado de apelación, la tarea principal del Tribunal de Apelaciones es examinar como los

---

[30] 32 LPRA Ap. V, R. 52.2 (a).
[31] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000); *Arriaga v. FSE*, 145 DPR 122, 131 (1998); *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[32] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).
[33] 4 LPRA Ap. XXII-B, R. 13 (A).
[34] 32 LPRA Ap. V, R. 47.
[35] *Íd.*

tribunales inferiores aplican el derecho a los hechos particulares de cada caso y si abusaron de su discreción.[36] El foro apelativo no debe pretender administrar ni manejar el trámite regular de los casos ante el foro primario.[37] Así, pues, si las determinaciones del tribunal no están desprovistas de base razonable ni perjudican los derechos de una parte, debe prevalecer el criterio del juez de instancia.[38] Por ello, se ha establecido que los foros apelativos no deben intervenir con las facultades discrecionales del tribunal de instancia, a menos que se demuestre que: (i) actuó con perjuicio o parcialidad; (ii) abusó de su discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o derecho sustantivo. Igualmente, se permite intervenir para evitar un perjuicio sustancial.[39]

## B. Apreciación de la Prueba

Sabido es que el ejercicio discrecional de la apreciación de la prueba que lleva a cabo el tribunal de instancia y las determinaciones de hecho que realiza están revestidas de confiabilidad, por lo cual merecen respeto y deferencia.[40] A esos efectos, la valoración que lleva a cabo el foro primario se presume correcta, toda vez que es quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos.[41] En consecuencia, cuando el Tribunal de Apelaciones de enfrenta a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad; (ii) incurrió en un craso abuso de

---

[36] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 707 (2013); *Sierra, Secretario del Trabajo v. Tribunal Superior*, 81 DPR 554, 572 (1958).

[37] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013).

[38] *Sierra, Secretario del Trabajo v. Tribunal Superior,* supra*, a la pág. 572.

[39] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 210 (2023).

[40] *Argüello v. Argüello*, 155 DPR 62, 79 (2001), citando a *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987); *Trinidad v. Chade*, 153 DPR 280, 291 (2001).

[41] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021); *Meléndez v. El Vocero de PR*, 189 DPR 123, 142 (2013); *Pueblo v. Santiago,* 176 DPR 133, 148 (2009); *Pueblo v. Acevedo Estrada,* 150 DPR 84, 99 (2000).

discreción, o, (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[42] Ello, puesto que el referido tribunal tiene ante sí expedientes mudos e inexpresivos.[43] En merito de lo anterior, se ha entendido que, en ausencia de la transcripción de la prueba, el Tribunal de Apelaciones no cuenta con los elementos para descartar la apreciación fundamentada que realizó el foro primario.

### C. Desahucio

Acorde con el Código de Enjuiciamiento Civil, tienen acción para promover el juicio de desahucio los dueños de la finca, sus apoderados, los usufructuarios o cualquiera otro que tenga derecho a disfrutarla y sus causahabientes.[44] A tales efectos, procederá el desahucio contra los inquilinos, colonos y demás arrendatarios, los administradores, encargados, porteros o guardas puestos por el propietario en sus fincas, y cualquier otra persona que detente la posesión material o disfrute precariamente, sin pagar canon o merced alguna.[45]

El desahucio es uno de los procedimientos más utilizados en nuestro país para reivindicar, mediante trámite y juicio sumario, la posesión y el disfrute de un inmueble.[46] El Tribunal Supremo ha expresado que ha mantenido íntegro su carácter sumario; pero que, a su vez ha permitido la presentación de defensas relacionadas íntimamente con las causas de desahucio alegadas.[47] El procedimiento sumario responde al interés del Estado en atender rápidamente la reclamación del dueño de un inmueble que ve

---

[42] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000); *Pueblo v. Irizarry*, 156 DPR 780, 789 (2002); *Pueblo v. Maisonave*, 129 DPR 49, 62-63 (1991).
[43] *Ramírez Ferrer v. Conagra Foods PR*, supra, a la pág. 811.
[44] Código de Enjuiciamiento Civil de Puerto Rico de 1933 (Código de Enjuiciamiento Civil), Art. 620, 32 LPRA sec. 2821.
[45] Art. 621 del Código de Enjuiciamiento Civil, *supra*, 32 LPRA sec. 2822.
[46] *Turabo Ltd. Partnership v. Velardo Ortiz*, 130 DPR 226, 234-235 (1992).
[47] *Íd.*, a la pág. 235; *Mora Dev. Corp. v. Sandín*, 118 DPR 733, 748 (1987).

interrumpido el derecho a poseer y disfrutar de su propiedad.[48] A raíz de ello, el objetivo de esta acción especial es recuperar la posesión de hecho de un bien inmueble mediante el lanzamiento o la expulsión del arrendatario o precarista.[49] Debido a que lo único que se busca recobrar es la posesión, en la acción sumaria debe limitarse la concurrencia o consolidación de otras acciones o defensas.[50] Consecuentemente, cuando el demandado presenta otras defensas afirmativas relacionadas con la acción de desahucio, éste puede solicitar que el procedimiento se convierta al trámite ordinario. [51] Cónsono con lo anterior, el beneficio de la economía y rapidez del trámite sumario se perdería si la acción no queda restringida a la consideración y resolución de la cuestión estricta para la cual se ha creado; quiérase decir, la recuperación de la posesión material en los casos determinados por la ley.[52]

Respecto al procedimiento sumario en casos de desahucio, el Tribunal Supremo ha expresado que: "la necesidad de que ocasionalmente el procedimiento sumario de desahucio se convierta en uno ordinario, no puede llevarnos a configurar una regla automática".[53] Sabido que es doctrina general establecida por el Tribunal Supremo que los conflictos de título no pueden dilucidarse en el juicio de desahucio por ser éste uno de carácter sumario en que únicamente se trata de recobrar la posesión de un inmueble por quien tiene derecho a ella.[54] Por ello, si un demandado en desahucio produce prueba suficiente que tienda a demostrar que tiene algún derecho a ocupar un inmueble y que tiene un título tan bueno o mejor que el del demandante, surgirá un conflicto de título que hace

---

[48] *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5, 9 (2016).
[49] *Íd.,* a la pág. 10.
[50] *Íd.*
[51] *ATPR v. SLG Volmar-Mathieu,* supra, a la pág. 10.
[52] *Telesforo Fernández & Hno., Inc. v. Pérez,* 79 DPR 244, 247-248 (1956).
[53] *Turabo Ltd. Partnership v. Velardo Ortiz, supra,* a la pág. 241.
[54] *C.R.U.V. v. Román,* 100 DPR 318, 321 (1971).

improcedente la acción de desahucio.[55] Así, pues, una vez esgrimidas las defensas presentadas por el demandado, el juzgador deberá auscultar sus méritos, los hechos específicos que se aducen y discrecionalmente ordenar la conversión del procedimiento al juicio ordinario.[56] Es decir, más allá de sus alegaciones, el demandado debe demostrar con hechos específicos que se justifica convertir el procedimiento en uno ordinario.[57] De esta forma el tratamiento de todos los demás derechos y cuestiones accesorias o colaterales corresponderán a la acción ordinaria, puesto que el único pronunciamiento en la sentencia de desahucio sumario es si procede o no ordenar el desalojo.[58]

### D. El dolo contractual

Conforme al Artículo 1213 del Código Civil de 1930, para que exista un contrato deben concurrir los requisitos siguientes: (i) consentimiento entre los contratantes; (ii) objeto cierto que sea material del contrato, y (iii) causa de la obligación que se establezca.[59] Ahora bien, si el consentimiento fue prestado por error, violencia, intimidación o ***dolo*** el contrato será nulo.[60] Habrá dolo cuando con palabras o maquinaciones insidiosas uno de los contratantes induce al otro a celebrar un contrato que, sin ellas, no hubiera pactado.[61] Es decir, el dolo es producido por una persona que conoce las consecuencias antijuridicas de sus actos, pero, aun así, emplea un complejo de malas artes para engañar a quien actúa de buena fe, para beneficio propio.[62] Así, pues, puede haber dolo cuando una de las partes contratantes calla alguna circunstancia

---

[55] *C.R.U.V. v. Román,* supra, a la pág. 322.

[56] *Turabo Ltd. Partnership v. Velardo Ortiz*, supra, a las págs. 245-246.

[57] *Íd.,* a la pág. 247.

[58] *Telesforo Fernández & Hno., Inc. v. Pérez,* supra, a la pág. 248.

[59] Código Civil de Puerto Rico de 1930 (Código Civil de 1930), Art. 1213, 31 LPRA sec. 3391 (derogado). El derecho aplicable en el caso de autos se remite al Código Civil de 1930, toda vez que nos encontramos ante hechos ocurridos con anterioridad a la aprobación y vigencia del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*

[60] *Íd.,* Art. 1217, 31 LPRA sec. 3404 (derogado).

[61] *Íd.,* Art. 1221, 31 LPRA sec. 3408 (derogado).

[62] *Colón v. Promo Motor Imports, Inc.*, 144 DPR 659, 667 (1997).

importante relacionada al objeto del contrato.[63] Por otra parte, cabe resaltar que el dolo no se presume. Sin embargo, ello no significa que el dolo tiene que probarse directamente, puesto que el mismo puede evidenciarse por inferencia o mediante prueba circunstancial.[64]

Existen dos tipos de dolo, el grave, el cual también se ha denominado causante, y el incidental.[65] El dolo grave es aquel que causa y lleva a celebrar el contrato, de modo que, sin él, las partes no hubieran celebrado el contrato.[66] Entiéndase, es aquel que determina el consentimiento. Por ello, el dolo grave produce la nulidad del contrato.[67] Así, pues, decretada la nulidad de un contrato, en el cual medio dolo, las partes deberán restituirse las cosas que fueron materia de este, con sus frutos y el precio de sus intereses, conforme al Artículo 1255 de, Código Civil de 1930.[68] El Tribunal Supremo ha resaltado que, al determinar la presencia de dolo grave, se debe tomar en cuenta la preparación académica de la persona, así como su condición social y económica, y las relaciones y el tipo de negocios que ocupa.[69] Lo anterior, porque no siempre el dolo surgirá de un simple hecho, en ocasiones el dolo será el resultado de un cúmulo de actos y circunstancias.[70]

Por su parte, el dolo incidental no produce la nulidad del contrato, solo obliga a indemnizar por los daños y perjuicios.[71] Ello, puesto que, en estos casos, existe la voluntad de contratar, pero hay engaño en el modo en el cual se celebra el contrato. Es decir, en

---

[63] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 886 (2008).
[64] *Colón v. Promo Motor Imports, Inc.*, supra, a la pág. 669.
[65] *Íd.*
[66] *Bosques v. Echevarría*, 162 DPR 830, 836 (2004); *Colón v. Promo Motor Imports, Inc.*, supra, a la pág. 67.
[67] *Bosques v. Echevarría*, supra, a la pág. 836.
[68] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 886. Véase, además, Art. 1255 del Código Civil de 1930, *supra*, 31 LPRA sec. 3514 (derogado).
[69] *Citibank v. Dependable Ins. Co., Inc.,* 121 DPR 503, 519 (1988).
[70] *Acosta & Rodas, Inc. v. PRAICO*, 112 DPR 583, 616 (1982).
[71] *Colón v. Promo Motor Imports, Inc.*, supra, a la pág. 667.

ausencia de dolo, el contrato se hubiera celebrado, pero, no bajo las mismas condiciones.[72]

Vemos entonces que los efectos de cada tipo de dolo son patentemente distintos. Por una parte, el dolo grave produce la nulidad del contrato, mientras que, en los casos de dolo incidental, el contrato se mantiene y el perjudicado podrá peticionar que se condene a la parte dolosa a la reparación de las pérdidas sufridas y las ganancias dejadas de percibir.[73]

### E. Falta de parte indispensable

Se considera parte indispensable aquella que tenga un interés común, "sin cuya presencia no pueda adjudicarse la controversia".[74] A su vez, esta es una parte de la cual no se puede prescindir, y cuyo interés en el asunto es de tal magnitud que no puede dictarse un decreto final sin lesionar y afectar sustancialmente sus derechos, o sin permitir que la controversia quede, en tal estado, que su determinación final sea inconsistente con la equidad.[75] Así, pues, para que una parte sea indispensable, será necesario que su interés sea real e inmediato. De manera que su interés en el pleito no puede ser una mera especulación o un interés futuro.[76]

En mérito de lo anterior, resulta importante determinar si el tribunal podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente.[77] Por ello, si la persona que se considera parte indispensable no está presente en el litigio, se trasgrede su debido proceso de ley.[78] A tenor, nuestro Alto Foro ha expresado que "lo verdaderamente trascendental es que la ausencia

---

[72] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 887.
[73] *Colón v. Promo Motor Imports, Inc.*, supra, a la pág. 668.
[74] Regla 16 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1.
[75] *FCPR v. ELA et al.*, 211 DPR 521 (2023), citando a *Cirino González v. Adm. Corrección et al.*, 190 DPR 14, 46 (2014); *García Colón et al. v. Sucn. González*, 178 DPR 527, 548 (2010).
[76] *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 223 (2007).
[77] *Romero v. S.L.G. Reyes*, 164 DPR 721, 733 (2005).
[78] *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 479 (2019).

de parte indispensable priva de jurisdicción al tribunal.[79] Conforme a ello, la sentencia que se emita en ausencia de parte indispensable es nula.[80]

Acorde con lo antes expuesto, la omisión, o no acumulación de partes indispensables, constituye una defensa para la parte contra quien se reclama y puede ser fundamento para una moción de desestimación.[81] Sin embargo, lo anterior no constituye un impedimento para que el Tribunal conceda oportunidad de traer al pleito a la parte originalmente omitida, siempre y cuando pueda adquirir jurisdicción sobre esta.[82]

Consecuentemente, de tal arraigo es el interés de proteger a las partes indispensables que la no inclusión en el pleito de una parte indispensable constituye una defensa irrenunciable, la cual puede presentarse en cualquier momento durante el proceso.[83] En lo que a nosotros respecta, los tribunales apelativos deben levantar motu proprio la falta de parte indispensable, debido a que ésta incide sobre la jurisdicción del tribunal.[84] No obstante, dicha desestimación no tendrá el efecto de una adjudicación en los méritos ni, por ende, de cosa juzgada.[85]

Por último, cabe resaltar que puede haber personas que no son partes indispensables, pero son necesarias para que se pueda conceder un remedio completo. A tenor, la Regla 16.2 de Procedimiento Civil indica que quedará a discreción del tribunal ordenar su comparecencia.[86]

---

[79] *FCPR v. ELA et al.*, supra; *García Colón et al. v. Sucn. González*, supra, a la pág. 550.
[80] *FCPR v. ELA et al.,* supra*; García Colón et al. v. Sucn. González,* supra, a la pág. 550.
[81] Regla 10. 2(6) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2.
[82] *Mun. De San Juan v. Bosque Real S.E.*, 158 DPR 743, 757 (2003); *Sánchez v. Sánchez*, 154 DPR 645, 679 (2001).
[83] *Pérez Rosa v. Morales Rosado*, supra, a la pág. 223.
[84] *Íd.,* a las págs.  223-224.
[85] *Íd.*, a la pág. 224.
[86] 32 LPRA Ap. V, R. 16.2.

III

*-a-*

Sin ánimos de resultar reiterativos, precisa señalar que, tras examinar con detenimiento los autos ante nuestra consideración, es patente el incumplimiento de la parte apelante con el Reglamento de este Tribunal de Apelaciones en lo que a la Regla 16 se refiere.[87] Nos explicamos.

Sabido es que la marcha ordenada y efectiva de los procedimientos judiciales es un imperativo de nuestro ordenamiento jurídico. Como axioma de ese principio, es norma conocida por toda la profesión legal en Puerto Rico que el incumplimiento con las reglas de los tribunales apelativos impide la revisión judicial.[88] En ese sentido, las normas que rigen el perfeccionamiento de los recursos apelativos deben observarse rigurosamente.[89]

En lo pertinente al presente caso, la Regla 16 (E)(1) de nuestro Reglamento dispone que el apéndice de un *Recurso de Apelación* debe contener una copia literal de lo siguiente:

[…].

(a) las alegaciones de las partes, a saber, la demanda principal, las demandas de coparte o de tercero y la reconvención, y sus respectivas contestaciones;

(b) la sentencia del Tribunal de Primera Instancia cuya revisión se solicita y la notificación del archivo en autos de copia de la misma;

(c) toda moción debidamente timbrada por el Tribunal de Primera Instancia, resolución u orden necesaria para acreditar la interrupción y reanudación del término para presentar el escrito de apelación y la notificación del archivo en autos de copia de la resolución u orden;

**(d) toda resolución u orden, y toda moción o escrito de cualesquiera de las partes que forme parte del expediente original en el Tribunal de Primera Instancia, en las cuales se discuta expresamente**

---

[87] 4 LPRA Ap. XXII-B, R. 16.
[88] *Soto Pino v. Uno Radio Group*, 189 DPR 84, 90 (2013); *Cárdenas Maxán v. Rodríguez*, 119 DPR 642, 659 (1987).
[89] *UGT v. Centro Médico del Turabo, Inc.*, 208 DPR 944, 957 (2022); *Isleta v. Inversiones Isleta Marina, Inc.*, 203 DPR 585, 590 (2019); *Rojas v. Axtmayer Ent., Inc.* 150 DPR 560, 564 (2000).

**cualquier asunto planteado en el escrito de apelación, o que sean relevantes a éste;**

**(e) cualquier otro documento que forme parte del expediente original en el Tribunal de Primera Instancia y que pueda serle útil al Tribunal de Apelaciones para resolver la controversia.**[90]

Por su parte, el subinciso (5)(2) de la aludida regla dispone que la omisión de los referidos documentos podría dar lugar a la desestimación del recurso.[91] Sobre el particular, el Tribunal Supremo enfatizó que, generalmente, se ha movido a desestimar recursos por tener apéndices incompletos cuando esa omisión no permite penetrar en la controversia o constatar la jurisdicción.[92]

En el caso de marras, el apéndice del *Recurso de Apelación* presentado por la apelante contiene los siguientes documentos: (i) la Sentencia apelada; (ii) el Contrato de arrendamiento suscrito por las partes;[93] (iii) la *Demanda* de desahucio presentada por la parte apelante; (iii) la *Contestación a la demanda y reconvención* presentada por la parte apelada, y (iv) la *Contestación a la demanda y reconvención enmendada.* Sin embargo, la apelante omitió incluir en el apéndice los otros tantos dictámenes y escritos que forman parte del expediente original del tribunal de instancia, en los cuales se discutieron expresamente los asuntos planteados en el *Recurso de Apelación,* entre otros documentos que forman parte del referido expediente y que eran relevantes, así como útiles para esta Curia resolver la presente controversia.[94]

---

[90] 4 LPRA Ap. XXII-B, R. 16. (Énfasis nuestro).
[91] *Íd.*
[92] *Vázquez Figueroa v. E.L.A.*, 172 DPR 150, 155 (2007).
[93] Apéndice del recurso, a las págs. 19-24. Revisados los autos ante el TPI en SUMAC, en la Entrada 67, pudimos constatar que este documento corresponde al marcado como Exhibit 1 por estipulación, a los fines del juicio en su fondo.
[94] A modo ilustrativo, la apelante omitió incluir mínimamente los siguientes documentos que surgen del expediente en SUMAC:
- Entrada 28 – *Contestación a Reconvención Enmendada,* presentada el 16 de noviembre de 2022.
- Entrada 62 – *Informe de Conferencia con Antelación a Juicio,* presentada el 15 de octubre de 2022.
- Entrada 63 – *Minuta* de la vista sobre conferencia con antelación a juicio, celebrada el 17 de octubre de 2022.
- Entrada 64 – *Orden,* emitida el 17 de octubre de 2022, y notificada al día siguiente. Mediante esta *Orden,* el foro primario dispuso sobre la

Visto lo anterior, en ánimos de cumplir con la máxima judicial de que los casos sean atendidos en sus méritos, y para poder ejercer de forma responsable nuestra función revisora, se realizó un estudio exhaustivo del expediente ante el foro de instancia en SUMAC. Puntualizamos que, decidido lo anterior, la antedicha omisión de la apelante obligó a este Panel a, prácticamente, preparar un nuevo apéndice, para poder ejercer nuestra función revisora de manera sensata. El señalado estudio requirió evaluar con detenimiento cada una de las entradas en el expediente judicial, así como los anejos incluidos a cada documento principal.   Ello, para tener la oportunidad de estudiar y analizar este caso, en un contexto lógico y responsable. Además, fue indispensable tomar en consideración todas las incidencias procesales del caso según se desprenden de los autos.

Además, con este examen pudimos constatar cuáles fueron los procedimientos judiciales y acontecimientos ocurridos antes de la celebración del juicio, tales como la presentación de todas las alegaciones de las partes en el caso, el *Informe de Conferencia con Antelación a Juicio,* así como las incidencias de la Vista en la cual se discutió y quedó aceptado el referido Informe. Igualmente, de los autos ante el TPI en el SUMAC se evaluó lo acaecido durante la celebración del juicio en su fondo, puesto a que, se examinó la *Minuta* de cada uno de los dos (2) días de vista, así como la prueba

---

presentación del *Informe de Conferencia con Antelación a Juicio* y expresó que el mismo fue aceptado en la vista [celebrada el 17 de octubre de 2022].

- Entrada 65 – *Moción adjuntando documentos*, presentada por la apelante, el 30 de enero de 2023.  Este escrito cuenta con seis (6) anejos.
- Entrada 67 – *Moción sometiendo prueba de la parte demandada-reconviniente para utilizar en el juicio,* presentada por la parte apelada el 31 de enero de 2023. Este escrito cuenta con ocho (8) anejos.
- Entrada 71 – *Minuta* del juicio en su fondo, celebrado el 1 de febrero de 2023. En esta *Minuta* se incluyó como anejo el *Registro General de Evidencia Presentada* en el juicio.
- Entrada 72 – *Minuta* de la continuación del juicio en su fondo celebrado el 2 de febrero de 2023. En esta *Minuta* se incluyó como anejo el Registro General de Evidencia presentada en el juicio. La prueba admitida fue marcada como como Exhibit 1 al 22 por estipulación; Exhibit 1 al 4(b) de la parte apelada, y Exhibit 5 al 7 de la parte apelada. La prueba no admitida quedó marcada como Identificación 1 de la parte apelante.

documental admitida, la cual resaltamos, tampoco fue incluida en el apéndice del recurso.

*-b-*

Con lo anterior en mente, pasaremos a discutir los errores alzados por la parte apelante. En apretada síntesis, la señora Sánchez Vega acudió ante nos porque quedó inconforme con la determinación del foro de instancia al desestimar la *Demanda* sobre desahucio y cobro de dinero. Igualmente, quedó inconforme con el curso decisorio de dicho foro, cuando, luego de haber concedido el remedio anterior, declaró *Ha Lugar* la *Reconvención* instada por los esposos Román Pérez, en vez de haberla desestimado. Por otro lado, la apelante también esgrimió que el tribunal *a quo* incidió al haber admitido cierta prueba documental a pesar de su oportuna y correcta objeción.

Luego de haber estudiado con detenimiento el expediente ante nuestra consideración en su totalidad, así como evaluado minuciosamente los autos ante el TPI en SUMAC, pero también tomando en cuenta que, no contamos con la reproducción de la prueba oral en este caso, disponemos que los errores esgrimidos no fueron cometidos. Abundamos.

Comenzamos por expresar que luego de estudiar los errores alzados, razonamos que el *primer*, *segundo* y *cuarto* error pueden ser discutidos de manera conjunta, por lo que así obraremos.

Vemos que la señora Sánchez Vega, nos alega que fue un error del tribunal de instancia que amerita su revocación, el haber desestimado la *Demanda*, aduciendo que dicha determinación estuvo basada en una alegada ausencia de parte indispensable. No tiene razón. Abundamos.

Primeramente, puntualizamos que la revisión de este Tribunal se da contra la decisión apelada, no contra el resultado o los

fundamentos.[95] Dicho lo anterior, reiteramos que, conforme al Código de Enjuiciamiento Civil, únicamente tendrán acción para promover un juicio de desahucio los dueños de la finca, sus apoderados, los usufructuarios o cualquiera otro que tenga derecho a disfrutarla y sus causahabientes.[96]

En el presente caso, aunque la apelante esbozó en el contrato de arrendamiento suscrito con los esposos Román Pérez que era dueña del inmueble en cuestión, surge inequívocamente de las determinaciones de hecho esgrimidas por el foro primario que, el inmueble arrendado a la parte apelada, no estaba inscrito a nombre de la apelante.[97] Ahora bien, en vista de lo anterior, la apelante alegó que el referido inmueble había sido adquirido por su padre, quien falleció, allá para el año 1992.[98] Sin embargo, ésta, a la fecha, no posee ningún documento acreditativo de título a favor de su padre.[99] Además, se desprende de las determinaciones de hecho que la apelante declaró no ser la única heredera de su padre, puesto que tiene una hermana.[100] Por otra parte, surge, igualmente, de las referidas determinaciones, que, durante el contrainterrogatorio, la apelante admitió que, al momento de suscribir el contrato de arrendamiento con los esposos Román Pérez, no era dueña del inmueble en pleno dominio.[101] En mérito de lo anterior, el foro primario determinó, entre otras cosas, que dado a que la apelante no demostró tener pleno dominio del inmueble, el cual fue objeto de contratación con los esposos Román Pérez, procedía la desestimación de la *Demanda* de desahucio. A su vez, el Tribunal de instancia enfatizó que ". . . **de ser cierto** que el padre de Sánchez

---

[95] *Pueblo v. Pérez*, 159 DPR 55, 566 (2003); *Asoc. Pesc. Pta. Figueras v. Marina de Pto. del Rey*, 155 DPR 906, 920 (2001); Álvarez *Figueredo v. González Lamela*, 134 DPR 374, 380(1993).
[96] Art. 620 del Código de Enjuiciamiento Civil, *supra.*
[97] Apéndice del recurso, a las págs. 5-6, Determinaciones de hecho #2 y #9.
[98] *Íd.*, a la pág. 6, Determinación de Hecho #11.
[99] *Íd.*, a la pág. 7, Determinación de Hecho #13.
[100] *Íd.*, Determinación de Hecho #15.
[101] *Íd.*, Determinación de hecho #17.

adquirió el inmueble, dicha hermana de Sánchez tendría un interés común sobre el inmueble y sobre la controversia".[102]

Es claro que, tras la celebración del juicio en su fondo, el foro primario emitió aquellas determinaciones de hecho que le merecieron credibilidad. Conforme reseñamos en nuestra previa exposición doctrinal, el ejercicio discrecional de la apreciación de la prueba que ejerce el tribunal de instancia y las determinaciones de hecho que realiza merecen respeto y deferencia.[103] Por ello, la valoración que lleva a cabo el foro primario se presume correcta, pues es quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos.[104] En consecuencia, este tribunal apelativo, al enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad; (ii) incurrió en un craso abuso de discreción, o, (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[105] Ello, puesto que esta Curia, únicamente, posee expedientes mudos e inexpresivos.[106] Por consiguiente, menos aún podemos intervenir con las determinaciones del tribunal de primera instancia en ausencia de la transcripción de la prueba, cual es la situación de este caso. Ante la carencia de prueba oral, este Tribunal de Apelaciones no cuenta

---

[102] Apéndice del recurso, a la pág. 13. (Énfasis nuestro).
[103] *Argüello v. Argüello*, supra, a la pág. 79, citando a *Pueblo v. Bonilla Romero*, supra, a la pág. 111; *Trinidad v. Chade*, supra, a la pág. 291.
[104] *Santiago Ortiz v. Real Legacy et al.*, supra, a la pág. 219; *Meléndez v. El Vocero de PR*, supra, a la pág. 142; *Pueblo v. Santiago*, supra, a la pág. 148; *Pueblo v. Acevedo Estrada*, supra, a la pág. 99.
[105] *González Hernández v. González Hernández*, supra, a la pág. 776; *Ramírez Ferrer v. Conagra Foods PR*, supra, a la pág. 811; *Rivera y otros v. Bco. Popular*, supra, a la pág. 155; *Pueblo v. Irizarry*, supra, a la pág. 789; *Pueblo v. Maisonave*, supra, a las págs. 62-63.
[106] *Ramírez Ferrer v. Conagra Foods PR*, supra, a la pág. 811.

con los elementos para descartar la apreciación realizada por el foro primario.[107]

En mérito de lo anterior, coincidimos en que, en el caso del título, la prueba creída demostró que la apelante no contaba con legitimación para instar la acción presentada, por lo que procedía su desestimación. Una lectura y estudio integral del expediente ante nuestra consideración, así como un examen de la *Sentencia* objeto de revisión, incluyendo la *Minuta* de cada uno de los dos (2) días de juicio en su fondo[108] y su prueba admitida, nos llevan a concluir que el tribunal *a quo* no se apartó del marco doctrinal vigente y que tampoco falló en las conclusiones de derecho alcanzadas. Lo anterior, independientemente de que hubiese discutido asuntos que estimamos no pertinentes o necesarios, por el curso decisorio tomado. Como ejemplo de ello, apuntamos a que, según reseñamos anteriormente, el tribunal de instancia dedicó parte del escrito a explicar que la hermana de la apelante era parte indispensable en el pleito de desahucio, dado a que la sucesión del padre de estas no había sido liquidada ni determinada. No obstante, lo anterior, lo verdaderamente esencial y lo cual no podemos ignorar es que, conforme detallamos, previamente, el foro primario determinó que la apelante no probó ser titular ni dueña en pleno dominio de la propiedad en cuestión. Según dispuso el tribunal de instancia, esa determinación de hecho se debió a que:

> Sánchez no pudo presentar documentos, escrituras, contratos o resolución de Declaratoria de Herederos e Instancias para demostrar que es la dueña del inmueble. **Su testimonio sobre la manera en que alegadamente advino a ser dueña, está plagado de vaguedades, imprecisiones y hasta evasivas.** En primer lugar, dijo Sánchez que su señor padre la había adquirido de Ernesto Rivera Báez. Sin embargo, Sánchez admitió que no conoce esto de primera mano, pues no presenció ese negocio jurídico. Tampoco trajo documento alguno sobre dicha transacción.

---

[107] *Hernández Maldonado v. Taco Maker*, supra, a la pág. 289.
[108] Véase, SUMAC, a las Entradas 71 y 72.

Declaró además Sánchez, que su padre falleció en el 1992. A pesar de ello, en todos los años transcurridos desde entonces, Sánchez no cuenta con documentos que la acreditan como heredera. Su testimonio fue sumamente evasivo sobre este aspecto, señalando que la Declaratoria de Herederos se "estaba gestionando", pero no pudo precisar cuándo. Pero aún, no produjo evidencia alguna sobre esos supuestos trámites que "se estaban gestionando". **El tribunal no puede dar cabida a la alegación de Sánchez de que es dueña en pleno dominio del inmueble. Ese hecho no quedó probado debido a la ausencia de evidencia documental, sumado a las ambigüedades, imprecisiones, vaguedades y evasivas en el testimonio de Sánchez.**[109]

Insistimos, en vista de lo antes expuesto, no nos convence el planteamiento de la señora Sánchez Vega de que la conclusión de derecho que provocó la desestimación de su causa de acción fue la alegada falta de inclusión de su hermana en el pleito, por ser parte indispensable. Aunque ciertamente, en el cuerpo de la *Sentencia,* el tribunal de instancia hizo expresiones relacionadas a que la hermana de la apelante era "una parte indispensable que no fue traída al pleito y sin cuya presencia no se puede emitir un remedio completo sin afectarle sus derechos,"[110] en el caso de marras, coincidimos en que, no era necesario hablar de parte indispensable. Abona a lo anterior, puesto a que es prístinamente claro, y según quedó totalmente apoyado en las determinaciones de hecho emitidas por el foro de instancia, específicamente, las enumeradas #1, #9, #10, #11, #12, #13, #14, #15, #16, #17, que la señora Sánchez Vega no logró probar que era dueña en pleno dominio del inmueble en cuestión. A tales efectos, la apelante no tenía legitimación para promover un pleito de desahucio, puesto que tampoco logró probar que era apoderada, usufructuaria, causahabientes o que tuviese derecho de disfrutar del inmueble en cuestión. Tras lo justipreciado, creído y plasmado en las antedichas determinaciones de hecho emitidas por el tribunal *a quo,* no existe otra determinación posible

---

[109] Apéndice del recurso, a las págs. 12-13. (Énfasis nuestro).
[110] *Íd.,* a la pág. 14.

que no fuese la desestimación. Por todo lo anterior, no le asiste razón a la parte apelante y disponemos que el tribunal de primera instancia actuó conforme a derecho al desestimar la acción de desahucio y cobro de dinero.

Por otro lado, veamos lo planteado por la señora Sánchez Vega cuando expresa que el foro primario incidió al haber declarado *Ha Lugar* la *Reconvención* instada por los esposos Román Pérez. En la aludida reconvención, la parte apelada sostuvo, principalmente, que la apelante incurrió en dolo, al ocultar que la propiedad en cuestión tenía vicios ocultos; entre ellos, que el pozo séptico de la propiedad en cuestión no servía, por lo que las aguas negras provenientes del mismo transcurrían por una propiedad vecina. Por su parte, la señora Sánchez Vega sostuvo en su *Recurso de Apelación* que las alegaciones de los esposos Román Pérez en cuanto al dolo y a lo vicios ocultos fueron un subterfugio para no pagar los cánones de arrendamiento pactados, por lo que las mismas carecían de mérito. Igualmente, planteó que el foro primario incidió en no desestimar la reconvención por falta de parte indispensable. Sobre el particular, esgrimió que Corona de Honra Home Care, Inc. debió de ser incluida en la acción del título. Ello, dado a que todos los recibos presentados en evidencia estaban a nombre de la referida entidad. No estamos de acuerdo.

Conforme reseñamos en nuestra previa exposición doctrinal, hay dolo cuando con palabras o maquinaciones insidiosas uno de los contratantes induce al otro a celebrar un contrato que, sin ellas, no hubiera pactado.[111] Es decir, el dolo se materializa cuando uno de los contratantes, a pesar de conocer las consecuencias antijurídicas de sus actos, procede con la contratación para beneficio propio.[112] Por consiguiente, podría haber dolo cuando una

---

[111] Art. 1221 del Código Civil de 1930, *supra* (derogado).
[112] *Colón v. Promo Motor Imports, Inc.*, supra, a la pág. 667.

de las partes mantiene silencio en cuanto a una circunstancia importante relacionada al objeto del contrato.[113] Se entiende que hay dolo grave cuando, la acción dolosa es la que lleva a celebrar el contrato y determina el consentimiento.[114] Este tipo de dolo producirá la nulidad del contrato y surgirá un deber de las partes a restituirse las cosas que fueron materia del mismo, con sus frutos y el precio de sus intereses, conforme al Artículo 1255 de Código Civil de 1930.[115]

Si bien es cierto que en la *Sentencia* apelada el tribunal *a quo* resaltó en sus determinaciones de hechos la lamentable situación que enfrentaron los esposos Román Pérez a consecuencia del pozo séptico y que, luego, concluyó que dicho pozo era un vicio que no podía ser visto a simple vista por los esposos, el aludido foro justipreció que el dolo y el engaño consistió, más bien, en que la apelante hizo creer a los esposos Román Pérez que era titular de la propiedad.[116]

Según detallamos previamente, al suscribir el contrato de arrendamiento en cuestión, la apelante figuró como dueña en pleno dominio del inmueble. Sin embargo, y según surge, admitió la apelante en el contrainterrogatorio, que **al momento de contratar con los esposos Román Pérez, ella sabía que no era dueña en pleno dominio, pero guardó silencio en cuanto a ese importante detalle**.[117] En apoyo a la anterior, huelga resaltar que, conforme se desprende de las determinaciones de hecho, cuando los esposos

---

[113] *Garcia Reyes v. Cruz Auto Corp.*, supra, a la pág. 886.

[114] *Bosques v. Echevarría*, supra, a la pág. 836 ; *Colón v. Promo Motor Imports, Inc.*, supra, a la pág. 67.

[115] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 886. Véase, además, Art. 1255 del Código Civil de 1930, *supra* (derogado).

[116] Apéndice del recurso, a la pág. 17. En la *Sentencia* apelada el foro inferior concluyó que:

> **La prueba desfilada** por la demandada-reconviniente, sin objeción de la parte demandante-reconvenida, **demostró claramente el dolo y el engaño al que fueron sometidos** Xiomara Pérez Santiago y Daniel J. Román Vázquez. **La demandante les hizo creer que era la titular de la propiedad** [. . .]

[117] Apéndice del recurso, a las págs. 5 y 17, Determinaciones de Hecho #2 y #17.

Román Pérez le solicitaron a la apelante la escritura de la propiedad, con el fin de gestionar las reparaciones al pozo muro, esta, inicialmente, les indicó que tan pronto la localizara se las enviaría.[118] Luego, cuando la parte apelada dio seguimiento a la solicitud, esta les manifestó que estaba gestionando una declaratoria de herederos.[119] Posteriormente, cuando los esposos Román Pérez dieron seguimiento a la apelante, en cuanto a la documentación solicitada, esta dejó de contestarle los mensajes y llamadas.[120] Por otra parte, cabe resaltar que, según las referidas determinaciones de hecho, la parte apelada estableció que, de haber sabido que la apelante no era la dueña de la propiedad, no hubiesen contratado con ella, ni hubieran invertido en reparaciones para acondicionar el inmueble.[121]

En mérito de todo lo anterior, coincidimos en que, en este caso, el dolo contractual se materializó cuando la apelante calló que no era dueña en pleno dominio de la propiedad que nos ocupa. Ello, puesto que, de los esposos Román Perez haber sabido que la apelante no era la dueña del inmueble, no hubieran celebrado el contrato de arrendamiento ni realizado reparaciones al inmueble. Así pues, coincidimos en que el foro primario no incidió en declarar *Ha Lugar* la reconvención y condenar a la apelante pagar la suma de las reparaciones a la propiedad incurridas por la parte apelada. Ello, puesto que, de no haber mediado dolo por parte de la apelante, estas reparaciones no se hubieran realizado, incluso conforme a la prueba creída, tampoco hubiesen contratado. Por consiguiente, bajo el crisol doctrinario previamente expuesto, colegimos que ameritaba compensar a la parte apelada tal cual lo actuado.

---

[118] *Íd.*, a la pág. 9, Determinaciones de Hecho #37 y #38.
[119] *Íd.*, Determinaciones de Hecho #39 y #40.
[120] *Íd.*, Determinación de Hecho #41.
[121] *Íd.*, a la pág. 11, Determinaciones de Hecho #53, #54 y #55.

En cuanto al planteamiento de la apelante de que procedía la desestimación de la reconvención por falta de parte indispensable, puntualizamos que, conforme esbozamos previamente, una parte indispensable es aquella cuyo interés en el asunto es de tal magnitud que no puede emitirse el dictamen final sin lesionar sus derechos, o sin ocasionar que la determinación sea inconsistente con la equidad.[122] Ahora bien, para que una parte sea indispensable, y que su ausencia amerite la desestimación de la acción, su interés en el pleito debe ser real e inmediato, no basta con alegar meras especulaciones o un interés futuro.[123] Si la persona no cumple con los anteriores requisitos, se entenderá que es una parte necesaria para que se pueda conceder un remedio completo, pero no indispensable, por lo que quedará a discreción del tribunal de instancia ordenar su comparecencia.[124]

Según detallamos, anteriormente, los esposos Román Pérez alegaron en su reconvención que, al suscribir el contrato de arrendamiento con la señora Sánchez Vega, esta incurrió en dolo, por esconder que la propiedad en cuestión tenía vicios ocultos. A esos efectos, conforme a las determinaciones de hecho esgrimidas por el tribunal a *quo,* a las cuales le otorgamos entera deferencia, y luego de estudiar meticulosamente los autos ante nuestra consideración y el expediente electrónico de este caso, disponible a través de SUMAC, es claro que Corona de Honra Home Care, Inc. no era una parte indispensable para disponer en totalidad de la reconvención presentada en contra de la apelante. Esta entidad nada tenía que ver con el dolo contractual incurrido por la señora Sánchez Vega, pues esta, únicamente, contrató y cometió acciones dolosas contra los esposos Román Pérez. A su vez, fue la parte

---

[122] *FCPR v. ELA et al.*, supra, citando a *Cirino González v. Adm. Corrección et al.*, supra, a la pág. 46; *García Colón et al. v. Sucn. González*, supra, a la pág. 548.
[123] *Pérez Rosa v. Morales Rosado*, supra, a la pág. 223.
[124] Regla 16. 2 de Procedimiento Civil, *supra.*

apelada quien, conforme a la prueba creída y sostenida por las determinaciones de hecho esgrimidas en la *Sentencia* apelada, incurrió en unos gastos para reparar y preparar la propiedad conforme al destino para el cual fue arrendada. Conviene recordar que dichos gastos no hubiesen sido incurridos de haber sabido que la señora Sánchez Vega no era la dueña de la propiedad. Por consiguiente, no procedía la desestimación de la reconvención por falta de parte indispensable. Es por todo lo anterior que disponemos que el *primer, segundo* y *cuarto* error no fueron cometidos.

Por último, procederemos a discutir el *tercer* error, en el cual la parte apelante nos invita a concluir que el tribunal apelado incidió al admitir unos recibos por alegados trabajos realizados sobre la propiedad objeto de este caso cuando los mismos, alegadamente, fueron preparados a nombre de y a favor de la Corporación, Corona de Honra Home Care, Inc., la cual no forma parte en el caso del título.

Con el propósito de poder comprender mejor el error esgrimido, es menester recapitular que, este tribunal revisor no cuenta con ningún método de reproducción de la prueba oral. Empero, como parte del estudio minucioso realizado, nos dimos a la tarea de evaluar tal cual hemos reseñado, toda la prueba admitida en este caso conforme surge de los autos en el SUMAC, así como la *Minuta* de la vista sobre conferencia con antelación a juicio y la *Minuta* de cada uno de los dos (2) días en los cuales se celebró el juicio en su fondo.

En *primer* lugar, durante la celebración de la conferencia con antelación a juicio, el foro primario emitió una orden en corte abierta a la parte apelada con el fin de que proveyera la información sobre las personas que testificarían como representantes de Constructora

Peniel y RR Welding.[125] La finalidad de esta orden fue para que la parte apelante determinara si los estaría deponiendo. De los autos se desprende que la parte apelada no cumplió.[126] Lo anterior, tuvo como consecuencia que el tribunal de instancia excluyera a los representantes de las referidas compañías como testigos de la parte apelada.[127]

En *segundo* lugar, pero, con lo anterior en mente, vemos que la parte apelante esgrime que el tribunal apelado falló al admitir unos recibos que fueron preparados a nombre de la Corporación, Corona de Honra Home Care, Inc., la cual no forma parte en el caso del título. Nuevamente, al realizar nuestra función revisora, pudimos constatar que, el apéndice incluido por la parte apelante en este recurso estaba huérfano de información que nos permitiera comprender razonablemente el error esgrimido. Por tanto, una vez más, evaluamos en su totalidad del expediente del caso ante el TPI en el SUMAC.

En el recurso ante nos, la apelante alega que, todas las facturas de **Constructora Peniel**, venían a nombre de "Corona de Honra Home Care, Inc. (Corporación), y de igual forma las facturas de RR Welding.[128] En su alegato en *Oposición a Apelación*, la parte apelada se opuso a lo anterior, expresando que la parte apelante omitió en su petitorio que todas estas facturas también incluían el nombre de la señora Xiomara Pérez.[129] Un examen de los autos coincide con lo esbozado por el foro primario en su Determinación de hechos #49, cuando indicó que ". . . [l]as facturas de Constructora Peniel, todas venían a nombre de "Corona de Honra Home Care, Inc. (Xiomara Pérez)"."[130]  Por su parte, en relación a las facturas de RR

---

[125] Véase SUMAC, a la Entrada 63.
[126] *Íd.*, a la Entrada 71.
[127] *Íd.*
[128] Recurso de Apelación, a la pág. 22.
[129] *Oposición a Apelación*, a la pág. 20.
[130] Apéndice del recurso, a la pág. 11. Véase, SUMAC, a la Entrada 67, Exhibit 2(a) al 2(p).

Welding, las mismas están a nombre de la Corporación. No pudimos constatar que tuviesen el nombre de Xiomara Pérez.[131]

Ahora bien, y en lo atinente con relación a estas facturas, el error esgrimido versa sobre un evento ocurrido durante el juicio en su fondo. La señora Sánchez Vega esboza haber objetado en el juicio la admisibilidad de las facturas, planteamiento que no prosperó. Ahora bien, sin intención resultar repetitivos, nuevamente resaltamos que no contamos con ningún método de la reproducción de la prueba oral que nos permita comprender lo que exactamente ocurrió durante el juicio. A falta de lo anterior, al revisar minuciosamente los autos ante el TPI en SUMAC encontramos que, mientras que en la *Sentencia* apelada se expresó que la prueba documental de la parte apelada fue recibida **sin objeción** de la parte apelante,[132] de la *Minuta* del juicio en su fondo se desprende algo distinto.[133] Veamos.

Al revisar la *Minuta* del primer día de juicio,[134] pudimos observar un desglose de la prueba admitida, en particular en cuanto a la prueba de la parte apelada. La prueba se marcó por el foro primario, comenzando con el **Exhibit 2 (a) hasta el Exhibit 2 (p)**, siendo todas **facturas de la Constructora Peniel**. Luego, se marcó el Exhibit 3. Posteriormente, el **Exhibit 4 (a) al Exhibit 4 (b)**, siendo estas últimas **facturas de RR Welding**. Se desprende además de la referida minuta que:

> [s]e marcaron y **se admitieron los Exhibit 4 (a-b) con la objeción de la parte demandante de que fueron firmados por un tercero que no estaba presente.** El licenciado Rodríguez sostuvo que la Regla 901 de Evidencia en el inciso (b) dice que no necesariamente la persona que firmó el documento debe autenticarlo y puede hacerlo un testigo con conocimiento.[135]

---

[131] Véase, SUMAC, a la Entrada 67.
[132] Apéndice del recurso, a la pág. 3.
[133] Véase, SUMAC, a la Entrada 71.
[134] *Íd.*
[135] *Íd.* (Énfasis nuestro).

Es de ver que, distinto a lo que reza la *Sentencia* apelada, en efecto hubo una objeción, pero, **específicamente,** en cuanto a los Exhibit 4 (a-b), relacionados las Facturas de RR Welding. Así, pues, en la *Minuta* del juicio en su fondo pudimos constatar cuál fue el motivo de la objeción,[136] cuál la réplica provista por la representación legal de la parte apelada y, finalmente, la determinación del foro *a quo.* Ahora bien, de los autos ante nuestra consideración **no** se desprende que la objeción hubiese sido la que ahora se alega en el recurso de apelación, entiéndase, que su objeción no fue que "los recibos no debían ser admitidos en evidencia, pues constan a nombre de una corporación que no es parte en el presente pleito".[137] De los autos ante nos, se desprende que la objeción fue por un fundamento distinto y resuelta conforme a derecho.

Visto lo anterior, veamos lo que establece el ordenamiento jurídico vigente en cuanto a qué debe tener presente este tribunal intermedio cuando, en un recurso, se plantea que procede la revocación de una sentencia emitida por el foro primario, por haberse admitido erróneamente cierta prueba. Sobre el particular, la Regla 104 (A) de Evidencia dispone que la parte perjudicada por la admisión errónea de evidencia debe presentar una objeción oportuna, específica y correcta.[138] Por consiguiente, si quien levanta como error la admisión errónea de evidencia incumple con el anterior requisito, esta Curia no tendrá facultad para revocar el dictamen emitido por el tribunal *a quo.*[139] No obstante, lo anterior, este tribunal apelativo puede considerar un error sobre admisión

---

[136] El motivo de la objeción conforme a la *Minuta* del juicio en su fondo fue "que los Exhibit 4 (a-b) [. . .] fueron firmados por un tercero que no estaba presente", mientras que la réplica consistió en que "no necesariamente la persona que firmó el documento debe autenticarlo y puede hacerlo un testigo con conocimiento". Véase, SUMAC, a la Entrada 71.

[137] Recurso de Apelación, a las págs. 22-23.

[138] 32 LPRA Ap. VI, R. 104.

[139] E.L. Chiesa, *Reglas de Evidencia Comentadas,* San Juan, SITUM, 2016, a la pág. 26.

errónea de evidencia, e incluso revocar una sentencia por incurrir en la antedicha incidencia, aunque no se haya objetado oportunamente la prueba, siempre y cuando estén presentes las circunstancias siguientes:

> (a) El error fue craso ya que no cabe duda de que fue cometido;
>
> (b) el error fue perjudicial porque tuvo un efecto decisivo o sustancial en la sentencia o decisión cuya revocación se solicita, y
>
> (c) el no corregirlo resulte en un fracaso de la justicia.[140]

En el caso de marras, aun cuando tuvimos un hallazgo en cuanto a las facturas de RR Welding, debe quedar claro que, conforme al escrupuloso estudio de los autos ante nuestra consideración, **no** existe base para poder concluir que, en efecto, se hubiese objetado la admisibilidad de las facturas de la Constructora Peniel. Tampoco es posible concluir que la admisión de la referida prueba tuvo un efecto sustancial en la *Sentencia* apelada, más aún cuando la controversia esencial de la reconvención declarada con lugar era si la apelante incurrió en dolo contractual, lo cual nada tenía que ver con las facturas de RR Welding. Menos aún podemos concluir que, de no corregir este error señalado por la parte apelante, ello resultará en un fracaso a la justicia. Por tanto, colegimos que, en ausencia de los requisitos establecidos por las Reglas de Evidencia, para considerar un error sobre admisión errónea de prueba, este tribunal no tiene facultad para intervenir con el error señalado por la señora Sánchez Vega.

Por otra parte, huelga destacar que, aunque sabido es que una corporación tiene una personalidad jurídica separada e independiente de la de sus accionistas,[141] a base de la totalidad de los autos ante nos, en relación a las facturas de RR Welding, independientemente de que los documentos admitidos en evidencia

---

[140] 32 LPRA Ap. VI, R. 106
[141] *Liquilux Gas Corp. v. Berrios, Zaragoza,* 138 DPR 850, 860 (1995).

recen que la factura estuvo a nombre de la Corporación, es claro que el tribunal de instancia creyó sin ambages, conforme a la prueba testimonial, que fueron los esposos Román Pérez quienes contrataron con RR Welding para la construcción de unos portones y puertas.[142] Además, justipreció que las antedichas facturas fueron pagadas por la parte apelada con sus propios recursos y no con recursos de la Corporación.[143] Igual credibilidad dio en torno a quién pagó las facturas de Constructora Peniel, específicamente, cuando dio como un hecho probado el que "[l]os esposos Román Pérez pagaron la sumas mencionadas en las determinaciones de hecho número 48 y 50 de sus propios recursos y no de la corporación".[144] Conforme hemos sostenido en varias partes de este escrito, este Tribunal no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el tribunal de instancia, a menos que se demuestre perjuicio, parcialidad, abuso de discreción o que erró en la aplicación del derecho.[145] Además, en ausencia de una transcripción de la prueba oral, no contamos con elementos para poder apartarnos de la valoración que le concedió el foro primario a la prueba cuestionada.[146] En mérito de lo anterior, nos es forzoso respetar la determinación del referido foro en cuanto a que la parte apelante fue quien contrató con RR Welding y la Constructora Peniel y que le pagó con su propio dinero y no con los de la Corporación.

A tenor con lo anteriormente expuesto, disponemos que el *tercer* error tampoco fue cometido. Visto todo lo anterior,

---

[142] Apéndice del recurso, a la pág. 9, Determinación de Hecho #45.

[143] *Íd.*, a la pág. 11, Determinaciones de Hecho #50 y #52.

[144] *Íd.*, Determinación de Hecho #52.

[145] *González Hernández v. González Hernández*, supra, a la pág. 776; *Ramírez Ferrer v. Conagra Foods PR*, supra, a la pág. 811; *Rivera y otros v. Bco. Popular*, supra, a la pág. 155; *Pueblo v. Irizarry*, supra, a la pág. 789; *Pueblo v. Maisonave*, supra, a las págs. 62-63.

[146] *Hernández Maldonado v. Taco Maker*, supra, a la pág. 289.

forzosamente concluimos que procede *confirmar* la *Sentencia* apelada.

IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La juez Lebrón Nieves emite Voto Disidente escrito.

Lcda.  Lilia M. Oquendo Solís<br/>Secretaria del Tribunal de Apelaciones

| | | |
|---|---|---|
| ZORAYA SÁNCHEZ VEGA<br><br>Apelante<br><br>V.<br><br>XIOMARA PÉREZ SANTIAGO; DANIEL J. ROMÁN VÁZQUEZ; LA SOCIEDAD LEGAL DE GANANCIALESCOMPUESTA POR ELLOS<br><br>Apelados | KLAN202300258 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: VB2021CV00486<br><br>Sobre: Desahucio y Cobro de Dinero |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero

**VOTO DISIDENTE DE LA JUEZ LEBRÓN NIEVES**

En San Juan, Puerto Rico, a 16 de octubre de 2024.

En esta ocasión, la Mayoría del Panel ha decidido confirmar la *Sentencia* emitida por el foro de primera instancia, en la que: 1) se desestimó la causa de acción de desahucio interpuesta por la parte apelante y, 2) se declaró Ha Lugar la reconvención instada por la parte recurrida.

Como cuestión de umbral, es meritorio discutir lo concerniente a las disposiciones reglamentarias atinentes a la práctica apelativa. Es precisamente sobre este particular, que la Juez que suscribe disiente del curso de acción tomado por la Mayoría del Panel. Me explico.

En su Sentencia, la Mayoría establece con meridiana claridad, el craso incumplimiento de la parte apelante con las disposiciones reglamentarias que rigen a este foro revisor intermedio. Empero, a pesar de analizar y discutir minuciosamente *"el patente incumplimiento de la parte apelante con el Reglamento de este*

*Tribunal de Apelaciones en lo que a la Regla 16 se refiere*[147]*"*, optó por subsanar *motu proprio* dicho incumplimiento, y procedió a realizar una búsqueda en SUMAC y preparar un "segundo apéndice", lo cual, en modo alguno, nos corresponde hacer.

Como es conocido, y en lo pertinente, la Regla 16(E)(1) de nuestro Reglamento[148], dispone que, la inclusión de un apéndice debe contener, entre otros, los siguientes requisitos:

> [.....]
> (E)  Apéndice
>
>> (1) El escrito de apelación, salvo lo dispuesto en el subinciso (2) de este inciso y en la Regla 74, incluirá un Apéndice que contendrá una copia literal de:
>>
>>> (a) las alegaciones de las partes, a saber, la demanda principal, las demandas de coparte o de tercero y la reconvención, y sus respectivas contestaciones;
>>>
>>> (b) la sentencia del Tribunal de Primera Instancia cuya revisión se solicita y la notificación del archivo en autos de copia de la misma;
>>>
>>> (c) toda moción debidamente timbrada por el Tribunal de Primera Instancia, resolución u orden necesaria para acreditar la interrupción y reanudación del término para presentar el escrito de apelación y la notificación del archivo en autos de copia de la resolución u orden;
>>>
>>> (d) Toda resolución u orden, y toda moción o escrito de cualesquiera de las partes que forme parte del expediente original en el Tribunal de Primera Instancia, en las cuales se discuta expresamente cualquier asunto planteado en el escrito de apelación, o que sean relevantes a éste.
>>>
>>> (e) Cualquier otro documento que forme parte del expediente original en el Tribunal de Instancia y que pueda ser útil al Tribunal de Apelaciones a los fines de resolver la controversia.

Con respecto a los apéndices incompletos, nuestra Máxima Curia ha expresado lo siguiente: "[D]ebemos aclarar que

---

[147] 4 LPRA Ap. XXII-B, R. 16.
[148] 4 LPRA Ap. XXII-B, R. 16(E)(1).

generalmente nos hemos movido a desestimar recursos por tener apéndices incompletos **cuando esa omisión no nos permite penetrar en la controversia o constatar nuestra jurisdicción**". (Cita omitida) (Énfasis nuestro). *Vázquez Figueroa v. E.L.A.*, 172 DPR 150, 155 (2007). También, ha expresado que, las normas que rigen el perfeccionamiento de los recursos apelativos deberán ser observadas rigurosamente. *Soto Pino v. Uno Radio Group.*, supra, pág. 90*; Hernández Maldonado v. Taco Marker*, 181 DPR 281 (2011). El incumplimiento con las disposiciones reglamentarias concernientes al contenido, forma y presentación de los recursos podría implicar que sean desestimados. *Pueblo v. Valentín Rivera*, 197 DPR 636, 641 (2017).

Por tanto, conforme ha resuelto el Alto Foro, la parte que comparece ante el Tribunal de Apelaciones, tiene la obligación de perfeccionar su recurso según lo exige el Reglamento del Tribunal de Apelaciones, para así colocar al foro apelativo en posición de poder revisar al tribunal de instancia. *Morán v. Marti*, 165 DPR 356, 367 (2005).

En consonancia con lo anterior, nuestra última instancia judicial expresó en *Hernández Jiménez v. A.E.E*, 194 DPR 378, 382-383 (2015) que:

> Todo ciudadano tiene un derecho estatutario a que un tribunal de superior jerarquía revise los dictámenes emitidos por los tribunales inferiores.[149] Ahora bien, ese derecho queda condicionado a que las partes observen rigurosamente el cumplimiento de las disposiciones reglamentarias establecidas por nuestro ordenamiento jurídico sobre la forma, contenido, presentación y notificación de los recursos, incluyendo lo dispuesto en los Reglamentos del Tribunal de Apelaciones y del Tribunal Supremo.[150]

---

[149] *García Morales v. Mercado Rosario*, 190 DPR 632, 638 (2014).
[150] *Soto Pino v. Uno Radio Group*, supra, pág. 90; *Hernández Maldonado v. Taco Maker*, supra, pág. 290; *Arriaga v. F.S.E.*, 145 DPR 122, 130 (1998).

Tal y como se desprende de la *Sentencia* emitida por la Mayoría de este Panel, "[e]n el caso de marras, el apéndice del *Recurso de Apelación* presentado por la apelante contiene los siguientes documentos: (i) la Sentencia apelada; (ii) el Contrato de arrendamiento suscrito por las partes;[151] (iii) la *Demanda* de desahucio presentada por la parte apelante; (iii) la *Contestación a la demanda y reconvención* presentada por la parte apelada, y (iv) la *Contestación a la demanda y reconvención enmendada.* Sin embargo, la apelante omitió incluir en el apéndice los otros tantos dictámenes y escritos que forman parte del expediente original del tribunal de instancia, en los cuales se discutieron expresamente los asuntos planteados en el *Recurso de Apelación,* entre otros documentos que forman parte del referido expediente y que eran relevantes, así como útiles para esta Curia resolver la presente controversia.[152]"

---

[151] Apéndice del recurso, a las págs. 19-24. Revisados los autos ante el TPI en SUMAC, en la Entrada 67, pudimos constatar que este documento corresponde al marcado como Exhibit 1 por estipulación, a los fines del juicio en su fondo.

[152] A modo ilustrativo, la apelante omitió incluir mínimamente los siguientes documentos que surgen del expediente en SUMAC:

- Entrada 28 – *Contestación a Reconvención Enmendada,* presentada el 16 de noviembre de 2022.
- Entrada 62 – *Informe de Conferencia con Antelación a Juicio,* presentada el 15 de octubre de 2022.
- Entrada 63 – *Minuta* de la vista sobre conferencia con antelación a juicio, celebrada el 17 de octubre de 2022.
- Entrada 64 – *Orden,* emitida el 17 de octubre de 2022, y notificada al día siguiente. Mediante esta *Orden,* el foro primario dispuso sobre la presentación del *Informe de Conferencia con Antelación a Juicio* y expresó que el mismo fue aceptado en la vista [celebrada el 17 de octubre de 2022].
- Entrada 65 – *Moción adjuntando documentos,* presentada por la apelante, el 30 de enero de 2023. Este escrito cuenta con seis (6) anejos.
- Entrada 67 – *Moción sometiendo prueba de la parte demandada-reconviniente para utilizar en el juicio,* presentada por la parte apelada el 31 de enero de 2023. Este escrito cuenta con ocho (8) anejos.
- Entrada 71 – *Minuta* del juicio en su fondo, celebrado el 1 de febrero de 2023. En esta *Minuta* se incluyó como anejo el *Registro General de Evidencia Presentada* en el juicio.
- Entrada 72 – *Minuta* de la continuación del juicio en su fondo celebrado el 2 de febrero de 2023. En esta *Minuta* se incluyó como anejo el Registro General de Evidencia presentada en el juicio. La prueba admitida fue marcada como como Exhibit 1 al 22 por estipulación; Exhibit 1 al 4(b) de la parte apelada, y Exhibit 5 al 7 de la parte apelada. La prueba no admitida quedó marcada como Identificación 1 de la parte apelante.

La Juez que suscribe si bien coincide con la Mayoría en que nos corresponde ejercer nuestro deber ministerial con responsabilidad, ello no implica que, debamos hacer el trabajo que vienen llamados a realizar los abogados ni subsanar, por iniciativa propia, los apéndices incompletos de los recursos de ninguna de las partes.

En *Ramos Soto v. Dpto. de Corrección y Rehabilitación*, 211 DPR 434, 435 (2023), nuestra última instancia judicial, al enfrentarse a una situación de incumplimiento reglamentario, denegó el recurso. Es preciso puntualizar las expresiones del Juez Asociado señor Martínez Torres, quien en su Voto de Conformidad, hizo constar la expresión siguiente:

> Cuando la insuficiencia arancelaria se debe a la parte o su abogado no se reconoce excepción alguna que permita su subsanación. *M-Care Compounding et al. v. Depto. Salud*, 186 DPR 159, 177 (2012). **Tampoco es saludable impulsar que se eleven los autos originales en cada caso en que una parte omita presentar un apéndice como requiere el Reglamento del Tribunal, sin articular justa causa para que se le exima.**
>
> **De lo que se trata es de propiciar un acceso igual a la justicia. Para ello todas las partes deben ser medidas con la misma vara, porque la dama de la justicia no tiene preferencia. Frases como "acceso adecuado a la justicia" o "sistema de justicia sensible" defienden un acceso desigual a la justicia, donde esta se imparte de manera distinta dependiendo de la identidad de las partes. Nuestro ordenamiento, en cambio, propicia la igualdad y rechaza los privilegios en la litigación.** *(Énfasis suplido).*

Por eso voto conforme con la Resolución del Tribunal.

Habida cuenta del craso incumplimiento de la parte apelante con las disposiciones reglamentarias, procedía, a juicio de esta Juez, la desestimación del recurso, en lugar de preparar el segundo apéndice al que se alude en la *Sentencia* mayoritaria.

Por otro lado, consignado lo anterior, es sabido que la ausencia de una parte indispensable priva al tribunal de jurisdicción para entender en los méritos del caso.

Las Reglas de Procedimiento Civil regulan el precepto de parte indispensable en un pleito. La Regla 16.1 establece que: "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularan como demandantes o demandadas, según corresponda". 32 LPRA Ap. V; *Payano v. Cruz*, supra; *RPR & BJJ Ex Parte*, 207 DPR 389, 407 (2021).

Nuestro Tribunal Supremo interpreta una parte indispensable como aquella de la cual no se puede prescindir, pues sin su presencia, las cuestiones litigiosas no pueden adjudicarse correctamente, ya que sus derechos quedarían afectados por una determinación judicial. *Payano v. Cruz*, supra; *RPR & BJJ Ex Parte*, supra, pág. 407; *López García v. López García*, 200 DPR 50, 63 (2018), citando a: *Deliz et als. v. Igartúa et als.*, 158 DPR 403, 432 (2003); *Cepeda Torres v. García Ortiz*, 132 DPR 698, 704 (1993). Hernández Colón, *op. cit.*, Sec. 1202, pág. 165. En particular, ha señalado el Alto Foro que:

> El tercero ausente [en el pleito] debe tener [tal] interés común en [este] que convierte su presencia en un requisito indispensable para impartir justicia completa o de tal orden que impida la confección de un decreto sin afectarlo. La justicia completa es aquella entre las partes y no la que se refiere a una parte y al ausente. El interés común tiene que ser uno real e inmediato. Hernández Colón, *op. cit.*, Sec. 1202, pág. 166.

Sobre el alcance de la Regla 16.1 de Procedimiento Civil, *supra*, nuestro Máximo Foro ha señalado que "este precepto procesal forma parte del esquema de rango constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley". *López García v. López García,* supra, págs. 63-64, citando a: *Mun. de San Juan v. Bosque Real, SE,* 158 DPR 743, 756 (2003). *Infante v. Maeso,* 165 DPR 474, 490 (2005); *Cepeda Torres v. García Ortiz*, supra. Más específico aún, esta regla parte de dos principios fundamentales, a saber: (1) la protección

constitucional que impide que una persona sea privada de la libertad y de su propiedad sin un debido proceso de ley, y (2) la necesidad de incluir a una parte indispensable para que el decreto judicial emitido sea completo. *Payano v. Cruz*, supra; *RPR & BJJ Ex Parte*, supra, pág. 407; *Allied Mgmt. Grp., Inc. v. Oriental Bank*, 204 DPR 374 389 (2020); *López García v. López García,* supra, pág. 64*.*

Ahora bien, precisa señalar que, no se trata de cualquier interés sobre un pleito, sino de un interés de tal orden que impida la confección de un derecho adecuado sin afectar o destruir radicalmente los derechos a esa parte. *Íd.*; *Romero v. SLG Reyes*, 164 DPR 721, 733 (2005). Véase Cuevas Segarra, *op. cit.*, T. II, pág. 691. Asimismo, el "interés común" al que hace referencia la Regla 16.1 de Procedimiento Civil, *supra,* no es cualquier interés en el pleito, sino que tiene que ser real e inmediato y no puede tratarse de meras especulaciones o de un interés futuro. *Payano v. Cruz*, supra; *RPR & BJJ Ex Parte*, supra, pág. 408; *Allied Mgmt. Grp., Inc. v. Oriental Bank*, supra, págs. 389-390.

Nuestro Tribunal Supremo ha establecido que la interpretación de esta regla requiere un enfoque pragmático, es decir, que se evalúe a la luz de las circunstancias particulares que se presenten y no de una formula rígida para determinar su aplicación. *López García v. López García,* supra, pág. 65, citando a: *Romero v. SLG Reyes,* supra, pág. 732; *RPR & BJJ Ex Parte*, supra, pág. 408. Específicamente, ha resuelto que:

> [l]a determinación final de si una parte debe o no acumularse depende de los hechos específicos de cada caso individual. Exige una evaluación jurídica de factores, tales como tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad. Cuando, en un pleito, las partes no se han tomado la iniciativa de brindar a terceros ausentes la oportunidad de salvaguardar unos derechos que pueden resultar afectados, estos terceros deben ser acumulados como parte para poder dar finalidad a la adjudicación de la controversia medular. No es suficiente que el ausente haya tenido la oportunidad de intervenir en el pleito, pues mientras no

se le haya hecho parte, no se le puede privar de unos derechos mediante sentencia. *López García v. López García,* supra, citando a: Cuevas Segarra, *op. cit.*, T. II, pág. 695. Véase *Payano v. Cruz,* supra.

Dicho de otro modo, la determinación de si debe acumularse a una parte en un pleito depende de los hechos específicos de cada caso. Ello implica que los tribunales deben hacer un análisis juicioso sobre los derechos de las partes que no están presentes y las consecuencias de que se unan al procedimiento. Así pues, lo fundamental es determinar si el tribunal puede hacer justicia y conceder un remedio final y completo a las partes presentes sin afectar los intereses de la parte ausente. *Payano v. Cruz,* supra; *RPR & BJJ Ex Parte,* supra, pág. 409; *López García v. López García,* supra, pág. 65.

La falta de parte indispensable en un pleito es un interés tan fundamental, que constituye una defensa irrenunciable que puede presentarse en cualquier momento durante el proceso. Incluso, los foros apelativos, si así lo entienden, pueden y deben levantar *motu proprio* la falta de parte indispensable en un pleito, debido a que ésta incide sobre la jurisdicción del tribunal. *Íd.*; *RPR & BJJ Ex Parte,* supra, pág. 408.

En conclusión, como se puede apreciar, la razón de ser de la Regla 16.1 de Procedimiento Civil, *supra,* responde al interés de proteger a aquellas personas —naturales o jurídicas— que no están presentes en el pleito de los efectos que acarrea la sentencia dictada y, así, evitar la multiplicidad de pleitos mediante un remedio efectivo y completo. *López García v. López García,* supra, pág. 65; *Granados v. Rodríguez Estrada II,* 124 DPR 593, 605 (1989); *Hernández Agosto v. Romero Barceló,* 112 DPR 407, 412–413 (1982).

Dicha protección encuentra su razón de ser en que, como se ha establecido en más de una ocasión, no traer a una parte indispensable a un pleito, sin duda alguna, se traduce en

una violación al debido proceso de ley que le cobija. *López García v. López García,* supra*,* pág. 66; *Deliz et als. v. Igartúa et als.,* supra, pág. 43.

Cabe destacar que, a pesar de que la omisión de una parte indispensable es motivo para desestimar una causa de acción, no es óbice para que los tribunales, a instancia propia o a solicitud de parte, conceda la oportunidad de traer al pleito a la parte ausente. *Payano v. Cruz,* supra, citando a *Meléndez v. ELA,* 113 DPR 811 (1983); J.A. Cuevas Segarra, *op. cit.,* pág. 694.

La Juez que suscribe coincide con el foro primario y con la Mayoría del Panel, en que la parte apelante falló al no establecer su interés propietario o participación en el inmueble en controversia y ante tal escenario, el foro *a quo,* estaba impedido de conceder el remedio solicitado, en ausencia de parte indispensable.

Ahora bien, al igual que en la acción de desahucio, la parte apelada, por su parte, falló al omitir incluir en su *reconvención* a una parte indispensable, esta es, a la parte *dueña* del bien inmueble en cuestión. Desconocemos si, en efecto, la propiedad pertenece a la Sucesión y/o quien es el verdadero dueño; si dichas mejoras fueron autorizadas o no y si el dueño está obligado a responder por las mejoras reclamadas por la parte apelada.

Lo que sí queda meridianamente claro es que, dicha parte resulta afectada positiva o negativamente de las mejoras realizadas a la propiedad. De lo que se trata aquí es de una parte que puede ver afectado su derecho propietario, el que como sabemos, es de entronque constitucional. En vista de lo anterior, debió ser incluida como parte indispensable.

Ante la ausencia de parte indispensable, el foro primario carecía de jurisdicción para adjudicar la reconvención. Asimismo, este foro revisor carece de jurisdicción para avalar el curso de acción de la primera instancia judicial.

Es por lo anterior que, no tengo otra alternativa sino, disentir nuevamente del curso de acción tomado por la Mayoría del Panel.

**GLORIA L. LEBRÓN NIEVES**
Juez de Apelaciones